2005 SD 69

**Kathleen M. THOMPSON, As Personal Representative of the Estate of Terry L. Thompson, Plaintiff and Appellee,**

v.

**Larry MEHLHAFF d/b/a Mehlhaff Construction and d/b/a Mehlhaff Trucking, Defendant and Appellant.**

**Nos. 23229, 23230.**

Supreme Court of South Dakota.

Argued Jan. 12, 2005.

Decided June 8, 2005.

Rehearing Denied July 13, 2005.

Jack Theeler and Douglas M. Dailey of Morgan, Theeler, Wheeler, Cogley & Petersen, Mitchell, South Dakota, Attorneys for plaintiff and appellee.

Gary P. Thimsen and Jennifer L. Wollman of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

GORS, Circuit Judge.

[¶ 1.] Terry Thompson's wife, Kathleen, on behalf of his estate (Thompson), sued Mehlhaff Trucking (Mehlhaff) for the wrongful death of her husband following a two-truck collision. The jury found Thompson to be contributorily negligent more than slight and entered a zero damage award. The trial court granted Thompson's motion for judgment notwithstanding the verdict on the jury's finding of contributory negligence more than slight but let the verdict stand on Mehlhaff's liability and ordered a new trial on damages only. Mehlhaff appeals and Thompson has filed a notice of review. We affirm.

FACTS

[¶ 2.] Spencer Quarries was paving a road with asphalt near Greenwood, South Dakota, in Charles Mix County. Spencer Quarries was using its trucks and employees and hired additional trucks and drivers from Mehlhaff to haul hot mix to the laydown machine. The loaded trucks drove on the "cold" side of the road to avoid damage to the newly laid asphalt on the "hot" side of the road. The empty trucks returned on the freshly paved "hot" side of the road. As a result, at the time of the collision, trucks were driving on the left-hand or "wrong" side of the road instead of the usual right-hand or "correct" side of the road. To protect the freshly laid asphalt, the trucks were driving like they were in England instead of South Dakota.

[¶ 3.] On June 16, 2000, Thompson, who was employed by Spencer Quarries, collided with Stanley Baltzer, an employee of Mehlhaff. Thompson was driving on the "hot" side of the road in the left-hand lane (where he was supposed to be). Baltzer swerved sharply to the right as he went around a curve in the road and the collision occurred in Thompson's lane. The closing speed of the trucks was more than 100 miles per hour. Together the trucks' total weight was 128,000 pounds. Both Thompson and Baltzer were killed in the collision.

[¶ 4.] Thompson's estate received worker's compensation benefits as a result of his death from his employer, Spencer Quarries. Baltzer's estate also collected worker's compensation benefits from his employer, Mehlhaff. Thompson then sued Mehlhaff asserting vicarious liability for the wrongful death of her husband caused by Mehlhaff's employee, Baltzer. Prior to trial, Mehlhaff moved for summary judgment claiming that Thompson was limited to the exclusive remedy of worker's compensation. The trial court denied summary judgment and allowed Thompson's suit against Mehlhaff to proceed.

[¶ 5.] The case was tried January 20–22, 2004. The jury returned a zero verdict against Thompson and in favor of Mehlhaff. In answers to special interrogatories, the jury found Baltzer was negligent and also found that Thompson was contributorily negligent more than slight. The trial court entered judgment in favor of Mehlhaff based on the jury's verdict.

[¶ 6.] Thompson moved for judgment notwithstanding the verdict and for a new trial. The trial court granted Thompson's motion and entered a judgment for Thompson on liability based on the jury's finding that Baltzer was negligent. The

trial court further granted a judgment notwithstanding the verdict on the jury's finding that Thompson was contributorily negligent. In doing so, the court concluded that it should have granted Thompson's motion for directed verdict on contributory negligence at the end of the trial because there was insufficient evidence for the jury to find contributory negligence more than slight. Finally, having granted a judgment notwithstanding the verdict for Thompson on liability, the trial court granted a new trial on damages. Mehlhaff appeals and Thompson raises one issue by notice of review.

## ANALYSIS

### ISSUE ONE

[¶ 7.] **Whether worker's compensation was Thompson's exclusive remedy.**

## STANDARD OF REVIEW

[¶ 8.] For the purpose of the summary judgment motion, both sides agreed that the material facts were not in dispute. Therefore, the exclusive remedy issue was strictly a question of law. Construction of worker's compensation statutes and their application to the facts is a question of law. *Faircloth v. Raven Industries, Inc.*, 2000 SD 158, ¶ 4, 620 N.W.2d 198, 200. "Questions of law are reviewed de novo without deference to the trial court." *Olson–Roti v. Kilcoin*, 2002 SD 131, ¶ 18, 653 N.W.2d 254, 258; *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771 (citing *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995)).

## DISCUSSION

[¶ 9.] Spencer Quarries was the general contractor on the Greenwood project and Mehlhaff was a subcontractor. Thompson was a truck driver for Spencer Quarries. When Thompson was killed on the job, his wife, as the personal representative of his estate, received worker's compensation benefits for the death of her husband from Spencer Quarries.[1] When Thompson's estate sued Mehlhaff for negligence, Mehlhaff moved for summary judgment and argued that the estate's claim should be dismissed because the worker's compensation benefits that were received from Spencer Quarries were Thompson's exclusive remedy. The trial court denied the motion.

[¶ 10.] This case presents a question of first impression in South Dakota. Mehlhaff urges this Court to adopt the minority rule that worker's compensation is the sole remedy of an employee of a general contractor who is injured by the negligence of an employee of a subcontractor. However, for the reasons stated below, we decline to do so and instead adopt the majority rule that an employee of a general contractor may collect worker's compensation from the general contractor and also sue a negligent subcontractor or a subcontractor for the negligence of an employee of the subcontractor.

[¶ 11.] The purpose of the South Dakota Worker's Compensation Act is to provide an injured employee with an expeditious remedy independent of fault and to limit the liability of employers and fellow employees. *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 95 (S.D.1993). There is an inherent trade-off in the worker's compensation scheme. The employee

---

1. Baltzer's estate collected worker's compensation benefits for the death of Baltzer from his employer Mehlhaff.

is guaranteed compensation if injured on the job but the employer's liability is limited in exchange for this certainty. The *quid pro quo* is liability for immunity. Therefore, "[w]orker's compensation is the exclusive remedy for all on-the-job injuries to workers except those injuries intentionally inflicted by the employer." *Id.* at 95.

[¶ 12.] SDCL 62–3–2 provides that an employee's rights under the worker's compensation law for death or injury arising out of employment are exclusive as to both the employer and fellow employees. That statute provides:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death *against his employer or any employee, partner, officer, or director of such employer,* except rights and remedies arising from intentional tort.

SDCL 62–3–2 (emphasis added). Therefore, the employee cannot sue the employer or fellow employees except for intentional torts. *Id.* However, an injured employee can sue a third party for negligence subject to the employer's right to subrogation for the worker's compensation paid to the employee. SDCL 62–4–38. That statute provides:

> If an injury for which compensation is payable under this title has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, *the injured employee may,* at the employee's option, either *claim compensation or proceed at law* against such other person to recover damages *or proceed against both the employer and such other person.* However, in the event the

injured employee recovers any like damages from such other person, the recovered damages shall be an offset against any worker's compensation which the employee would otherwise have been entitled to receive.

*Id.* (emphasis added). For example, if Thompson had been killed by a third party, such as a member of the motoring public unrelated to the construction project, Thompson's estate could collect worker's compensation and sue the third party for negligence. If Thompson's estate obtained a judgment from the third party, the estate would then have to repay the worker's compensation benefits to Spencer Quarries from that judgment.

[¶ 13.] Here, Thompson's estate sued the subcontractor, Mehlhaff, for vicarious liability as a result of Baltzer's negligence. Mehlhaff asserts Thompson could not sue under 62–3–2 because Baltzer was a fellow employee. While it is correct that Thompson could not sue Baltzer if he were a fellow employee, Baltzer worked for Mehlhaff, not Spencer Quarries. Therefore, Baltzer was not a fellow employee. Consequently, SDCL 62–3–2 did not preclude Thompson from suing Mehlhaff.

[¶ 14.] Mehlhaff also urges the adoption of a common employment theory to preclude this tort action. Mehlhaff argues that even if Thompson and Baltzer were not technically both employed by Spencer Quarries, as a practical matter they were both doing the same thing on the same job. For that proposition Mehlhaff relies upon a 1936 Massachusetts case, *Dresser v. New Hampshire Structural Steel Co.,* 296 Mass. 97, 101, 4 N.E.2d 1012, 1013–14 (1936), wherein the court held:

> [T]he plaintiff and the defendant's employer and every other workman on the job, regardless of his position, were engaged in a common employment and had the benefits of the Workmen's Compen-

sation Act. All the employers on the job, including the defendant, had insured under the act, and thereby provided for all employees the benefit of the act. By so doing, they became protected from a liability to pay damages to workmen and employees injured while with the scope of their common employment.

However, Massachusetts abolished "common employment immunity" by statute in 1972. MassGenL, ch 152, § 15 (2003).

[¶ 15.] Nevertheless, Mehlhaff asserts this Court should adopt the position of those minority jurisdictions that recognize the common employment doctrine. For example, in *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 702 (4thCir.1970), the common employment theory was applied where a subcontractor was performing part of the same trade, business or occupation as the general contractor. The test applied there was whether the subcontractor was doing the same work that the general contractor was doing on the job site and whether the general contractor could have done the work if it had not elected to hire the subcontractor. *Id.* In *Kast v. PPG Industries, Inc.*, 664 F.Supp. 237, 240 (W.D.Va.1987), an employee of a general contractor was also precluded from suing a subcontractor for negligence based on this theory. Similarly, in *Alvis v. Bill Jackson Rig Co., Inc.*, 636 P.2d 910, 912 (Okla.App.1981), a general contractor's employee who was injured by a subcontractor could not sue because he was in the same employment as the subcontractors. As previously mentioned, these cases represent the minority rule.

[¶ 16.] The majority rule is that the liability for benefits only runs up the ladder, not down. 6 Larson, Worker's Compensation Law, § 111.04[1][e] (2004) and [2] (2002). Baltzer could collect worker's compensation from Mehlhaff but, if Mehlhaff did not pay, Baltzer could also collect worker's compensation from Spencer Quarries. Since Spencer Quarries would be liable for Baltzer's worker's compensation if Mehlhaff did not pay, Spencer Quarries would be immune from suit by Baltzer for negligence. *See Metzger v. J.F. Brunken & Son, Inc.*, 84 S.D. 168, 172, 169 N.W.2d 261, 263–64 (1969). The general contractor receives immunity because the general contractor is the back-up provider of worker's compensation coverage. 6 Larson, Worker's Compensation Law, § 111.04[1][b] 111–27 (2004). The opposite is not true.

> When the positions are reversed, and an employee of the general contractor, or the general contractor as subrogee, sues the subcontractor in negligence, the great majority of jurisdictions have held that the subcontractor is a third party amenable to suit. The reason for the difference in result is forthright: the general contractor has a statutory liability to the subcontractor's employee, actual or potential, while the subcontractor has no comparable statutory liability to the general contractor's employee.

6 Larson, Worker's Compensation Law, § 111.04[2] (2002). Thompson could not collect worker's compensation from Mehlhaff if Spencer Quarries did not pay. Mehlhaff was not an insurer of Spencer Quarries' employees even though Spencer Quarries was an insurer of Mehlhaff's employees.

[¶ 17.] The *quid pro quo* for the employer's assumption of liability for worker's compensation is immunity from suit by the employee. Spencer Quarries was liable for and paid worker's compensation benefits for Thompson and therefore is entitled to immunity. Mehlhaff was not liable for and did not pay worker's compensation benefits for Thompson and therefore is not entitled to the *quid pro quo* of immunity from suit by Thompson.

When Thompson took a job with Spencer Quarries, he waived his right to sue Spencer Quarries in return for a sure thing on liability. Thompson did not go to work for Mehlhaff and did not waive his right to sue Mehlhaff. Mehlhaff had no worker's compensation obligation to Thompson. As a result there was no *quid pro quo* between Thompson and Mehlhaff. Therefore, Mehlhaff was not an employer of Thompson under SDCL 62–3–10 entitled to immunity because Mehlhaff had no duty to provide compensation for Thompson.

[¶ 18.] As the final argument in support of the common employment theory, Mehlhaff contends that Spencer Quarries was the "statutory employer" of Baltzer because it was also liable for worker's compensation insurance and benefits for Baltzer under SDCL 62–3–10. That statute provides:

> A *principal,* intermediate, or subcontractor *shall be liable for compensation to any employee* injured while in the employ *of any one of his subcontractors* and engaged upon the subject matter of the contract, to the same extent as the immediate employer. Any principal, intermediate, or subcontractor who shall pay compensation under the provisions of this section may recover the amount paid from any person, who, independently of this section, would have been liable to pay compensation to the injured employee. Every claim for compensation under this section shall in the first instance be presented to and instituted against the immediate employer, but such proceeding shall not constitute a waiver of the employee's rights to recover compensation under this title from the principal or intermediate contractor, but *the collection of full compensation from one employer shall bar recovery by the employee against any others,* and he shall not collect from all a total compensation in excess of the amount for which

any of such contractors is liable. This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management. (emphasis added).

Mehlhaff claims entitlement to the same immunity enjoyed by Spencer Quarries under SDCL 62–3–10. The statute provides that the employee shall not collect total worker's compensation in excess of the employee's total damages. However, this argument fails to appreciate that SDCL 62–3–10 does not provide that Thompson could not sue Mehlhaff; the statute only provides that Baltzer could not collect from Spencer Quarries if paid in full by Mehlhaff.

[¶ 19.] Mehlhaff is not entitled to immunity and may be sued by Thompson. We hold that a general contractor who is liable for worker's compensation benefits is entitled to immunity but a subcontractor who is not liable for the benefits is not entitled to such immunity. Therefore, the worker's compensation benefits, which Thompson's estate received from Spencer Quarries, were not its exclusive remedy and Thompson's estate could sue Mehlhaff for Baltzer's negligence.

## ISSUE TWO

[¶ 20.] **Whether the trial court erred in excluding Mehlhaff's expert witness.**

## STANDARD OF REVIEW

[¶ 21.] Admission of expert testimony is within the broad discretion of the trial court. *Schrader v. Tjarks,* 522 N.W.2d 205, 209 (S.D.1994); *Stormo v. Strong,* 469 N.W.2d 816, 820 (S.D.1991). "A trial court's evidentiary rulings are presumed to be correct and will not be re-

versed unless there is a clear abuse of discretion." *Stormo,* 469 N.W.2d at 820. In addition to showing an abuse of discretion, Mehlhaff must show that the excluded evidence might and probably would have resulted in a different verdict. *Schrader,* 522 N.W.2d at 209–10. Finally, the proponent of excluded evidence must also attempt to offer the excluded evidence at trial and make an offer of proof. *Joseph v. Kerkvliet,* 2002 SD 39, ¶ 7, 642 N.W.2d 533, 535 (quoting *State v. Norville,* 23 S.W.3d 673, 685 (Mo.Ct.App.2000)).

## DISCUSSION

[¶ 22.] On January 30, 2003, a year before the trial, the trial court set a date for the disclosure of expert witnesses as February 17, 2003, for Thompson and March 17, 2003, for Mehlhaff. Thompson disclosed experts on February 14, 2003, before the deadline. Mehlhaff did not disclose any experts by the March 17, 2003, deadline. Seven months after the deadline, Mehlhaff had not yet disclosed any experts. On October 17, 2003, Thompson filed a motion in limine to prohibit Mehlhaff from presenting any expert witness testimony. Finally, three weeks after the motion, and nearly eight months after the deadline had passed, Mehlhaff disclosed Thomas Alcorn as an accident reconstruction expert and moved for an extension of the deadline and a continuance of the trial set for January 20, 2004. The trial court denied the motion without a hearing.

[¶ 23.] Alcorn was not allowed to testify at trial. After the close of Thompson's case, Mehlhaff made an offer of proof submitting Alcorn's report to establish what Alcorn's testimony would have been. The offer of proof was denied.

[¶ 24.] Alcorn's report included the following in his "Discussion:"

This analysis has also taken into consideration the actions of the drivers in this accident. *Instructions given to the truck drivers indicate that the loaded trucks were to drive on the old section of roadway and empty trucks on the new section of roadway.* At the time of the accident the Mehlhaff truck [driven by *Baltzer]* was loaded and traveling west on the old section of roadway in the eastbound lane apparently as he had been instructed. Analysis of the evidence indicates the Spencer Quarries truck [driven by *Thompson]* was traveling east in the eastbound lane and not in accordance with the instructions given by the contractor. He was traveling on the cured or old mat and not on the new mat. It should be noted that Mr. Dirks report indicates that the driver of the Spencer Quarries truck [Thompson] was the contractor's employee that instructed other drivers where to drive. In that case, the Spencer Quarries driver *[Thompson] was in the wrong lane at the time of the accident.* Failure on the part of the driver of the Spencer Quarries truck *[Thompson]* and trailer to drive in the opposing lane as the drivers had been instructed *is a cause of this accident.* The driver of the Mehlhaff truck [Baltzer] and trailer was following instructions that had been given at the time of the accident. Once he was able to determine that the Spencer Quarries truck [Thompson] and trailer were in his lane he attempted to avoid to the right. *The Mehlhaff truck driver [Baltzer] did not contribute to the cause of this accident.* (emphasis added).

Alcorn concluded that Thompson caused the accident, not Baltzer. Good stuff for the defense. In fact, it would have been the *only* evidence of contributory negligence. However, it was not allowed into evidence based on the untimely disclosure.

[¶ 25.] Mehlhaff argues that exclusion of the testimony should have been

the "last resort" sanction for failure to timely disclose the witness. *Schrader,* 522 N.W.2d at 210. Mehlhaff relies upon a four-part test from *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 204 F.R.D. 309, 311 (W.D.La.2001), for determining whether to exclude a witness for untimely disclosure. First, the court should examine the party's explanation for failure to comply with the scheduling order. *Id.* Second, the court should determine the prejudice to the opposing party. *Id.* Third, the court should consider the possibility of curing the prejudice by granting a continuance. *Id.* Fourth, the court should take into account the importance of the witness' testimony. *Id.* However, even considering these factors the trial court did not abuse its discretion.

[¶ 26.] First, the only explanation offered by Mehlhaff for failure to disclose Alcorn in a timely manner was that by agreement both parties continued other discovery past the deadlines. Moreover, the record shows that Mehlhaff did not contact Alcorn until March 23, 2003, after the disclosure deadline. Then, despite written discovery requests asking for the identity of expert witnesses and the identity of persons investigating or reconstructing the collision, Mehlhaff waited until November 7, 2003, to disclose the expert it had retained seven months earlier. Mehlhaff also failed to supplement its discovery as required by the rules of discovery.

[¶ 27.] Second, in this case, Thompson would have been prejudiced by allowing Alcorn's late disclosure. Late disclosure would have required a continuance for additional discovery by Thompson and possible retention of additional experts.

[¶ 28.] Third, granting a continuance would not have solved the prejudice to Thompson. Despite a scheduling order requirement that any additional motions be filed by October 17, 2003, Mehlhaff did not file the motion for extension of disclosure and continuance by the deadline. Even when Thompson moved in limine to exclude any expert testimony, Mehlhaff did not disclose Alcorn until November 7, 2003, and did not move to extend the deadline to disclose until November 11, 2003, almost a month after the deadline for filing pre-trial motions. Everything Mehlhaff did in respect to Alcorn's testimony was dilatory. No other efforts appeared to faze Mehlhaff. The trial court did not err in determining exclusion was the only way to remedy the prejudice.

[¶ 29.] Fourth, Alcorn's testimony was not important enough to allow despite the violation of the disclosure deadline. Mehlhaff must show that Alcorn's testimony would have made a difference in the jury's finding. *Schrader,* 522 N.W.2d at 209–10. Thompson points out that the jury did find in Mehlhaff's favor so Alcorn's testimony would not have made a difference. While Thompson is correct, the argument begs the question because the trial court set aside the jury's verdict. The real question is whether the proffered evidence would have made a difference to the trial court which set aside the jury's finding of contributory negligence.

[¶ 30.] Alcorn's report was not based on personal knowledge. Alcorn's facts were taken solely from the State of South Dakota Investigator's Motor Vehicle Accident Report, the South Dakota Highway Patrol Case Report and the Lewis L. Dirk Accident Reconstruction Report–Witness Information. Each of these reports concluded that Thompson and Baltzer were in their proper lanes of travel (i.e., the "wrong" side of the road) prior to the collision and that Baltzer crossed over into Thompson's lane where the collision oc-

curred.[2] Inexplicably, Alcorn then concluded that Baltzer and Thompson were both traveling in the same lane and that Thompson was in the incorrect lane and that Thompson caused the accident by being in the incorrect lane. Where does this come from? There was no basis for this conclusion anywhere in the reports that Alcorn considered. Alcorn simply manufactured the conclusion out of whole cloth. Saying it is so does not make it so.[3] Alcorn reached his conclusion based on a misinterpretation or misstatement of the evidence he considered. Therefore, it would have been misleading and should not have been admitted. If it had been admitted, cross-examination by Thompson would undoubtedly have exposed Alcorn's error. Therefore, there was no harm to Mehlhaff. There was no abuse of discretion when the trial court refused the offer of proof and no abuse of discretion in the trial court's refusal to extend the deadline to allow disclosure of Alcorn as a witness or to continue the trial.

## ISSUE THREE

**[¶ 31.] Whether the trial court erred in excluding evidence of Spencer Quarries negligence.**

## STANDARD OF REVIEW

 **[¶ 32.]** Evidentiary rulings are reviewed under the abuse of discretion standard. *Zepp v. Hofmann,* 444 N.W.2d 28, 31 (S.D.1989). Rulings are presumed to be correct unless there is a clear abuse of discretion. *Id.*

## DISCUSSION

[¶ 33.] Thompson filed a motion in limine to prevent Mehlhaff from introducing evidence that Spencer Quarries was also negligent. Mehlhaff resisted, claiming that if the jury returned a verdict for Thompson, the jury should be allowed to apportion liability between Spencer Quarries and Mehlhaff if it found them both to be negligent. Under the exclusive remedy provision of the worker's compensation law found in SDCL 62-3-2, Spencer Quarries could not be held liable for Thompson's injury. However, Mehlhaff argued that the jury could still apportion liability between Spencer Quarries and Mehlhaff. Any apportioned liability against Spencer Quarries would reduce Mehlhaff's proportionate share of any award.

[¶ 34.] The trial court ruled that the jury would not be allowed to consider any claimed negligence by Spencer Quarries for apportionment. However, the trial court did allow Mehlhaff to introduce Spencer Quarries' "rules of the road" for the Greenwood construction project.[4]

2. Alcorn's summary of the State of South Dakota Investigator's Motor Vehicle Accident Report contained the following: "A 1987 Freightliner tractor [Baltzer] and trailer was traveling west on 310th Street in the eastbound lane. A 1991 Peterbilt tractor [Thompson] and trailer was traveling east on 310th Street in the westbound lane.... As the 1987 Freightliner tractor [Baltzer] and trailer entered a curve on 310th Street[, t]he driver steered towards the north and crossed over the centerline."

Alcorn's summary of the South Dakota Highway Patrol Case Report contained the following: "Mr. Baltzer was traveling west on 310th Street in the eastbound lane. Mr.

Thompson was traveling east on 310th Street in the westbound lane. Mr. Baltzer had crossed over the centerline and struck Mr. Thompson."

Alcorn's summary of the Lewis L. Dirk Accident Reconstruction Report–Witness Information contained the following: "[A]ll drivers were driving on the wrong side of the road the day of the collision."

3. *In re Crumling,* 214 F. 503, 504 (D.Pa.1914).

4. Thompson noticed this ruling for review as set forth in Issue Five.

[¶ 35.] Mehlhaff argued that Spencer Quarries was partly responsible for the collision because Spencer Quarries' "rules of the road" for the project required trucks to drive on the wrong side of the road, confusing the drivers and contributing to the collision. Mehlhaff's request for apportionment was based on comparative negligence and supported by cases from several other jurisdictions with comparative negligence statutes. Significantly, Mehlhaff did not claim Spencer Quarries' alleged negligence was the sole[5] proximate cause of the accident.

[¶ 36.] Mehlhaff's position has previously been rejected by this Court in *Parker v. Casa Del Rey–Rapid City, Inc.*, 2002 SD 29, ¶ 5, 641 N.W.2d 112, 120–21. In that case this Court adopted a Nebraska rule that precludes the employer, who could not be held liable because worker's compensation is the exclusive remedy, to be interjected into the case unless it was claimed that the employer's negligence was the *sole* proximate cause of the employee's injury. *Id.* Since Mehlhaff sought to apportion liability with Spencer Quarries, and did not claim that Spencer Quarries was entirely responsible for the collision, the trial court's ruling was correct and not an abuse of discretion.

## ISSUE FOUR

[¶ 37.] **Whether the trial court erred in granting the judgment notwithstanding the verdict on the issue of contributory negligence and ordering a new trial on the issue of damages.**

5. Page 31 of Mehlhaff's brief contains the following: "Because there was evidence that Spencer Quarries' actions or inactions in overseeing and managing the project were *a* contributing cause, traffic control regulations

## STANDARD OF REVIEW

[¶ 38.] The standard of review on a motion for directed verdict and judgment notwithstanding the verdict is set forth in *Roth v. Farner–Bocken*, 2003 SD 80, ¶ 8, 667 N.W.2d 651, 658–59:

A motion for directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse. A motion for judgment n.o.v. is based on and relates back to a directed verdict motion made at the close of all the evidence. SDCL 15–6–50(b). Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, then without weighing the evidence [we] must decide if there is evidence which would have supported or did support a verdict[.]

In *Fechner v. Case*, 2003 SD 37, ¶ 6, 660 N.W.2d 631, 633–34, this Court stated:

Rulings on motions for judgment notwithstanding verdict are reviewed under the abuse of discretion standard. *Bland*

adopted in the contract were relevant under SDCL 19–12–1 in considering and allocating proportionate degrees of fault between the parties." (emphasis added).

v. *Davison County*, 1997 SD 92, ¶ 26, 566 N.W.2d 452, 460. Evidence and inferences most favorable to the non-moving party are examined to determine whether there is substantial evidence to support the jury's judgment. *Robinson v. Mudlin*, 273 N.W.2d 753, 755 (S.D. 1979). Conflicting evidence is not reweighed; witness credibility is not reassessed. The moving party's evidence is only given consideration if it is uncontradicted or tends to amplify, clarify or explain evidence which supports the verdict. *Dartt v. Berghorst*, 484 N.W.2d 891, 895 (S.D.1992); *Nugent v. Quam*, 82 S.D. 583, 589, 152 N.W.2d 371, 374 (1967).

The standard of review on a motion for new trial is also set forth in *Roth*, 2003 SD 80, ¶ 9, 667 N.W.2d at 659:

Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion.

*Id.*, (citing *Biegler v. American Family Mut. Ins. Co.*, 2001 SD 13, ¶ 17, 621 N.W.2d 592, 598).

## DISCUSSION

[¶ 39.] At the close of the evidence, the trial court, although skeptical, allowed the question of contributory negligence to go to the jury. The jury was given instructions on negligence and contributory negligence. The jury found against Thompson returning a zero verdict and found in a special interrogatory that "Terry L.

Thompson [was] contributorily negligent more than slight." The trial court entered a judgment in favor of Mehlhaff based on the jury's verdict. Thompson moved for a judgment notwithstanding the verdict and for a new trial. The trial court granted Thompson's motion and entered judgment for Thompson and against Mehlhaff for liability based on the jury's finding that Baltzer was negligent. The trial court also granted a judgment notwithstanding the verdict on the jury's finding that Thompson was contributorily negligent. The court concluded that it should have granted Thompson's motion for directed verdict on contributory negligence at the end of the trial because there was insufficient evidence for the jury to find contributory negligence. Finally, having granted judgment notwithstanding the verdict for Thompson on liability, the trial court granted a new trial on damages.

[¶ 40.] Questions of negligence and contributory negligence are almost always questions for the jury. *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 903 (S.D.1994). When an action sounds in negligence, contributory negligence is available to temper the defendant's liability. *Gehrts v. Batteen*, 2001 SD 10, ¶ 7, 620 N.W.2d 775, 778. As long as there is competent evidence to support the theory of contributory negligence, it is proper for the issue to go to the jury. *Parker*, 2002 SD 29, ¶ 5, 641 N.W.2d at 115. The threshold for granting a directed verdict is that no reasonable jury could find contributory negligence.

[¶ 41.] In support of the jury's verdict of contributory negligence more than slight, Mehlhaff submitted the following, which is viewed in the light most favorable to the verdict:

(1) it was general knowledge that drivers would try to stay off the hot

side of the road whether they were empty or full;

(2) empty trailers can damage the hot side too;

(3) a foreman told a driver to use common sense so he always drove on the cold side whether empty or full;

(4) driver Baumiller testified that trucks would run empty on the cold side to stay off the new mat whenever possible;

(5) empty trucks driving on the cold side would use citizen's band radio communications to tell loaded trucks that they would get over to the hot side and out of the way;

(6) Baumiller said empty trucks drove on the cold side even after the collision that killed Baltzer and Thompson;

(7) driver Carr said it was common knowledge for empty trucks to travel on the cold side;

(8) an independent operator Magstadt had heard of other drivers getting chewed out for driving empty on the hot side;

(9) Waldera admitted that it was possible that drivers with empty trailers did not always drive on the hot side of the road

(10) Trooper Hanson testified that one reason Baltzer braked hard could have been an oncoming vehicle in his lane of travel;

(11) Michael Selves indicated it would be a normal reaction for a driver to swerve into the other lane to avoid something in his direct lane of travel

(12) investigator Lofgren could not dispute that Baltzer's skid marks began in the cold lane and show that he braked and steered into the hot lane;

(13) Thompson did not brake or attempt any evasive maneuvers to avoid the collision while Baltzer left 90 feet of skid marks

"A claim that the evidence was insufficient to establish contributory negligence is viewed 'in the light most favorable to upholding the verdict.'" *Johnson v. Armfield*, 2003 SD 134, ¶ 7, 672 N.W.2d 478, 481 (citing *Parker*, 2002 SD 29, ¶ 5, 641 N.W.2d at 115).

■■■ [¶ 42.] Mehlhaff's "evidence" of contributory negligence is built on speculation and innuendo. Several witnesses testified that drivers sometimes returned empty on the cold side of the road instead of on the hot side in violation of the "rules of the road" for the project. However, no one testified that Thompson was on the cold side of the road at or near the time of the collision[6] or that he had ever returned empty on the cold side. Additionally, there was no physical evidence that Thompson was on the cold side prior to the collision and everybody agreed that he was on the hot side of the road at the time of the collision. Speculation that Thompson "might have been" on the cold side did not meet the threshold necessary to create a question of fact for the jury on contributory negligence.

[¶ 43.] We agree with the trial court that Thompson's motion for a directed verdict on contributory negligence should

---

**6.** The only testimony that Thompson was on the cold side of the road was from Merle Vaughn who saw Thompson on the cold side when he turned around after dumping his load at the lay-down machine. *Thompson had to drive on the cold side to go around the* lay-down machine which was on the hot side of the road laying asphalt. By contrast, Marlin Magstadt testified that he was the last person to see Thompson just before the collision. Thompson was returning empty on the hot side of the road.

have been granted at the end of the evidence. Therefore, it was not an abuse of discretion to grant the motion for judgment notwithstanding the verdict. Since there was ample evidence for the jury to find Mehlhaff negligent, it was also not an abuse of discretion to allow the verdict against Mehlhaff to stand. All that was left was to set a new trial on damages.

[¶ 44.] Mehlhaff further complains that the trial court erroneously instructed the jury that Thompson was entitled to a presumption of due care:

### Instruction No. 18

It is the established law of this state that in the absence of any evidence as to the conduct of a person who died of injuries received in an accident, there is the presumption that he, acting on the instinct of self-preservation, was in the exercise of ordinary care. The Court rules that this presumption is applicable only to the conduct of Terry Thompson. Stanley Baltzer is not entitled to the presumption.

In *Theunissen v. Brisky,* 438 N.W.2d 221, 224 (S.D.1989), this Court said "[t]his is a presumption, in the absence of evidence to the contrary, that a person killed in an auto accident was exercising due care for his protection at, and immediately before, the accident." *Olesen v. Snyder,* 277 N.W.2d 729, 735 (S.D.1979); *Dehnert v. Garrett Feed Company,* 84 S.D. 233, 236, 169 N.W.2d 719, 721 (1969); *Vaughn v. Payne,* 75 S.D. 292, 63 N.W.2d 798 (1954). "This presumption is based on the natural instinct of self-preservation and the normal disposition to avoid self-destruction or personal harm." *Id.* Since we have concluded that the trial court was correct in granting the motion for judgment notwithstanding the verdict because there was insufficient evidence of contributory negligence, this instruction was properly given over Mehl-

haff's objection that it was not supported by the evidence.

### ISSUE FIVE

[¶ 45.] **Whether the trial court erred in allowing Spencer Quarries' "rules of the road" to be introduced into evidence.**

[¶ 46.] The trial court ruled that Mehlhaff could introduce Spencer Quarries' "rules of the road" for the Greenwood construction project. Thompson noticed this ruling for review. However, it is not necessary to reach Thompson's notice of review issue in view of our decision affirming the trial court's order granting a judgment notwithstanding the verdict and order for new trial on damages.

[¶ 47.] The trial court is affirmed.

[¶ 48.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 49.] GORS, Circuit Judge, for SABERS, Justice, disqualified.