#24596-a-DG

**2008 SD 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

PROGRESSIVE HALCYON INSURANCE
CO. and CAROL WELLNITZ,                                  Plaintiffs and Appellees,

  v.

ROXANNE PHILIPPI, PERSONAL
REPRESENTATIVE OF THE SYLVIA
RUHR ESTATE, DECEASED,                                  Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RONALD K. ROEHR
Judge

\* \* \* \*

MARK J. ARNDT of
May & Johnson, P.C.
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                                             and appellees.


DAVID R. STRAIT of
Austin, Hinderaker, Hopper,
  Strait & Bratland, LLP
Watertown, South Dakota                      Attorneys for defendant
                                             and appellant.

\* \* \* \*

ARGUED MARCH 26, 2008

OPINION FILED **07/23/08**

GILBERTSON, Chief Justice

[¶1.]          On August 22, 2006, Carol Wellnitz (Wellnitz) and her auto insurance provider, Progressive Halcyon Insurance Co. (Progressive), filed a declaratory judgment action in the South Dakota Third Judicial Circuit seeking a determination that immunity extended to her under South Dakota's workers' compensation statute, SDCL 62-3-2, for an injury that she caused to Sylvia Ruhr (Ruhr).  On February 8, 2007, Wellnitz and Progressive filed a motion for summary judgment under SDCL 15-6-56(c).  The circuit court granted the motion.  Ruhr's estate appeals and we affirm.

## FACTS AND PROCEDURE

[¶2.]          The parties stipulated to the material facts of the case.  Ruhr and Wellnitz were employed by Beverly Healthcare Center (BHC) in Milbank, South Dakota.  On February 13, 2006, they were both working at BHC.  Their shifts ended at approximately 10:30 p.m.  As was their routine at the end of a shift, the two left the facility through the usual exit and proceeded across the adjacent BHC parking lot to their respective vehicles.  Wellnitz exited the facility first, reaching her vehicle ahead of Ruhr.  Wellnitz backed out of her parking space and struck and injured Ruhr as Ruhr continued to her parked vehicle.  There was no showing that Wellnitz intentionally struck Ruhr.

[¶3.]          Ruhr collected benefits from BHC's workers' compensation insurance provider.  Ruhr then filed a claim with Progressive seeking to recover from Wellnitz's auto insurance liability coverage.  Under SDCL 62-3-2, BHC was immune from further liability due to Ruhr's receipt of workers' compensation benefits.  Wellnitz and Progressive then filed a declaratory judgement action seeking a

determination that the employer immunity provided under the statute also extended to Wellnitz as an employee of BHC. In its memorandum decision, incorporated by reference in the June 21, 2007 judgment and order, the circuit court concluded that the standard applied to establish Ruhr's eligibility for workers' compensation benefits under SDCL 62-3-2 also applied to Wellnitz, and established that at the time of the accident she too was an employee of BHC and thereby entitled to immunity under the statute.

[¶4.] On March 31, 2007, Ruhr died of causes unrelated to this accident. On July 23, 2007, Roxanne Philippi, personal representative of Ruhr's estate (PR), was substituted in this action.

[¶5.] PR appeals raising the following issue:

> Whether at the time of the accident, Wellnitz was an employee of BHC within the meaning of SDCL 62-3-2 so that Ruhr's personal injury claim, filed with Wellnitz's auto liability insurance provider, was precluded.

## STANDARD OF REVIEW

> In reviewing a trial court's order granting a motion for summary judgment, [w]e will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party.

Gakin v. City of Rapid City, 2005 SD 68, ¶7, 698 NW2d 493, 497 (internal citations omitted). "'Questions of law are reviewed de novo without deference to the trial court.'" Thompson v. Mehlhaff, 2005 SD 69, ¶8, 698 NW2d 512, 516 (citations omitted). "Construction of workers' compensation statutes and their application to the facts is a question of law." Id. (citing Faircloth v. Raven Industries, Inc., 2000 SD 158, ¶4, 620 NW2d 198, 200).

> Statutory construction is an exercise to determine legislative intent. In analyzing statutory language we adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction. When we must, however, resort to statutory construction, the intent of the legislature is derived from the plain, ordinary and popular meaning of statutory language.

State v. Johnson, 2004 SD 135, ¶5, 691 NW2d 319, 331-32 (*Petition of* West River Electric Assoc., 2004 SD 11, ¶15, 675 NW2d 222, 226 (internal citations omitted).

## ANALYSIS AND DECISION

[¶6.]     **Whether at the time of the accident, Wellnitz was an employee of BHC within the meaning of SDCL 62-3-2 so that Ruhr's personal injury claim, filed with Wellnitz's auto liability insurance provider, was precluded.**

[¶7.]     An employee's eligibility for workers' compensation benefits arising from an employment related injury and the employer's immunity from liability are governed under SDCL 62-3-2. Under the statute, an employer's immunity also extends to its officers, directors, partners and employees. SDCL 62-3-2. SDCL 62-3-2 provides:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death *arising out of and in the course of employment,* shall exclude all other rights and remedies of the employee, the employee's personal representatives, dependents, or next of kin, on account of such injury or death against the employer or any

employee, partner, officer, or director of the employer, except rights and remedies arising from intentional tort.

(Emphasis added).

[¶8.] PR's appeal raises an issue of first impression – namely how one is determined to be an "employee" immune from liability under SDCL 62-3-2. PR argues that while this statute sets out a standard by which an employee's injuries are assessed for purposes of workers' compensation, no standard is expressly provided to assess whether a co-employee tortfeasor is an "employee" for purposes of determining if immunity under the statute applies. PR argues that by inclusion of the immunity-limiting phrase – "except rights and remedies arising from intentional tort" – the Legislature meant to imply that the *respondeat superior* standard should be applied to assess whether a co-employee tortfeasor is immune from liability. I.e., a co-employee tortfeasor is immune from liability for injury to a fellow employee only when the injurious act occurs *within the scope of the tortfeasor's employment*. PR offers *Saala v. McFarland*, 403 P2d 400 (Cal 1965) in support of this argument.

    a.    *Whether the "workers' compensation" standard or the "respondeat superior" standard applies to the determination of whether a co-employee tortfeasor is entitled to immunity under SDCL 62-3-2.*

[¶9.] In *Saala*, the California Supreme Court clarified that two standards apply in the context of workers' compensation claims arising from employee injuries caused by a co-employee tortfeasor. 403 P2d at 403. First, the "arising out of and in the course of employment" or workers' compensation standard is applied to determine whether an employer is liable for an employee's injuries such that the

employee is eligible for workers' compensation benefits. *Id*. at 401. Second, the

"scope of employment" or *respondeat superior* standard is applied to determine if

the co-employee tortfeasor's injurious act occurred within the context of

employment such that the co-employee too is immune from liability. *Id*. at 403. In

other words, the co-employee tortfeasor is immune from liability for only those acts

from which, under the common law, liability would have attached to his employer.

*Id*. at 404. The court then reiterated that the standards are distinguishable:

> [T]his court recognized . . . that *scope of employment defines a more restricted area of employee conduct than the customary phrase "arising out of and in the course of the employment."* We stated: "Although this court has not gone so far as to hold that every injury to an employee attending to his duties and within the course of his employment is compensable, it has, in many cases, upheld the allowance of compensation for injuries arising out of acts *not strictly within the scope of the employment*: returning from lunch [citation]; drinking wine because of indisposition [citation]; smoking [citation] . . . .

*Id*. at 403 n3. (internal citations omitted) (first emphasis added, second emphasis

original).

 [¶10.]     The dual standards discussed in *Saala*, however, were grounded in

statute. *Id*. at 403. The court cited the relevant portions of the California Labor

Code §§ 3600 and 3601:[1]

> Section 3600 . . . states in relevant part that "Liability for the compensation provided by [the California Workers' Compensation Code], *in lieu of any other liability whatsoever to any person* . . . shall, without regard to negligence, exist against an employer for any injury sustained by his employees *arising out of and in the course*

---

1.     Relevant portions of California Labor Code §§ 3600 and 3601 remain intact.

> *of the employment . . . ."* It is then provided in section
> 3601, as amended . . . , that "(a) Where the conditions
> of compensation exist, the right to recover such
> compensation . . . is . . . the exclusive remedy for injury
> or death of an employee against the employer *or against*
> *any other employee of the employer acting within the scope*
> *of his employment . . . ."*

*Id.* at 401 (emphasis original). Section 3601 was amended in 1959 by the addition

of the employee-immunity provision and corresponding "scope of employment"

standard following a string of decisions in which the courts held that a co-employee

tortfeasor was liable for injury inflicted on the job. *Id.* at 402-03. In holding that

the California Legislature intended distinct standards to be applied in the two

contexts, the court opined:

> The presumption that an overall change is intended where
> a statute is amended following a judicial decision . . . is
> given its full effect if section 3601 as amended is construed
> to change the law stated in [our prior decisions] and exempt
> from civil liability only a coemployee's actions within the
> scope of employment, rather than those "arising out of and
> in the course of the employment."

*Id.* at 403.

[¶11.]         In *Donnelly v. Herron*, 727 NE2d 882 (Ohio 2000), the Ohio Supreme

Court addressed this issue. Ohio's Revised Code § 4123.741, which codifies

employer and employee tortfeasor immunity for job related injuries to co-employees,

is analogous to SDCL 62-3-2 with respect to employer and employee immunity.

Ohio RC 4123.741 provides:

> *No employee of any employer, as defined in* [Ohio's Workers'
> Compensation Code]*, shall be liable to respond in damages*
> *at common law or by statute for any injury or occupational*
> *disease, received or contracted by any other employee of*
> *such employer in the course of and arising out of the latter*
> *employee's employment*, or for any death resulting from

such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under [Ohio's Workers' Compensation Code].

(Emphasis added).

[¶12.]		The court in *Donnelly* reflected on the comments of Professor Larson regarding the standard applied in California in light of its labor code:

The commonest question that arises in these cases is: which test of "course of employment" applies?  Is it the workers' compensation test [, i.e. arising out of and in the course of employment], or the vicarious liability test [, i.e. in the scope of employment]?  ***The answer may be dictated by the wording of the immunity clause itself***.  *In California, for example, under the statutory phrase "acting within the scope of his employment," suit is barred against the coemployee only if at the time of the injury he or she was actively engaged in some service for the employer.  Accordingly, it can readily happen in California – indeed has happened – that in a marginal course of employment situation an employee will be held to have been sufficiently within the course of employment to receive workers' compensation, but not sufficiently actively engaged in service for his or her employer to enjoy the immunity from suit conferred by the California Labor Code.*  ***Parking lot accidents are a familiar example of this marginal category***, and *in one such case, an employee who was struck by a coemployee's automobile after work on the employer's parking lot was held not barred from suing the coemployee, although the coemployee had actually been awarded workers' compensation benefits as for an injury in the course of employment.*

727 NE2d at 884 (quoting 6 *Larson's Workers' Compensation Law* (1999) 111-12 to 111.14, § 111.03[3]) (emphasis added).  In holding that under Ohio RC 4123.741 the "workers' compensation" test, or "arising out of and in the course of employment" standard, applies in the context of the co-employee tortfeasor as well as the injured employee, *id*. at 885, the court further considered the rationale of Professor Larson:

> *The more satisfactory test, **unless expressly ruled out by statute**, is that* adopted by Illinois, New Jersey, Kentucky, Indiana, Oklahoma, and Florida, *which simply use the regular workers' compensation course of employment standard for this purpose.* After all, there are troubles and complications enough administering one course of employment test under the act, without adding a second. By adopting the [workers'] compensation test, a court has at hand a ready-made body of cases with which to dispose of most borderline situations.

*Id.* at 884 (quoting 6 *Larson's Workers' Compensation Law* § 111.03[3]) (emphasis added).

[¶13.] Our workers' compensation chapter, as originally codified, acted as an "all-inclusive" exclusion of any other rights and or remedies that an injured employee might have against "anybody and everybody" in exchange for benefits. Hagemann *ex rel.* Estate of Hagemann v. NJS Engineering, Inc., 2001 SD 102, ¶13, 632 NW2d 840, 846 (Gilbertson, J., concurring in result). However, in 1977 and 1978, the Legislature amended SDCL 62-3-2 to limit the exclusion by extending consequential employer immunity to only the employer's *other employees*, partners, officers, and directors. SDSess Laws 1977, ch 422; SDSess Laws 1978, ch 370, § 2. Prior to amendment, SDCL 62-3-2 included the phrase "arising out of and in the course of employment" as the standard under which an injured employee could receive benefits. Notably, when the statute was amended no additional standard was included under which to assess whether a co-employee was entitled to immunity.

[¶14.] In *Thompson v. Melhaff*, we stated the purpose of South Dakota's Workers' Compensation Act:

> is to provide an injured employee with an expeditious remedy independent of fault and to limit the liability of employers and fellow employees. There is an inherent trade-off in the worker's compensation scheme. The employee is guaranteed compensation if injured on the job but the employer's liability is limited in exchange for this certainty. The *quid pro quo* is liability for immunity. Therefore, "[w]orker's compensation is the exclusive remedy for all on-the-job injuries to workers except those injuries intentionally inflicted by the employer."

2005 SD 69, ¶11, 698 NW2d 512, 516-17 (internal citations omitted). SDCL 62-3-2 is devoid of express language that the *respondeat superior*, or "scope of employment" standard is to apply to the determination of whether one is an "employee" entitled to immunity under the statute. Had such a significant change been contemplated by the Legislature, surely it would have been specifically stated in the amended statute. To conclude otherwise would be to add omitted language to the statute in violation of our rule of statutory construction. Delano v. Petteys, 520 NW2d 606, 608 (SD 1994) (reiterating that the fundamental objective of statutory construction is to ascertain legislative intent from the language in the statute and that to add omitted language would be to add unlimited hazard to the inexact and uncertain business of searching for legislative intent). Therefore, we hold that under SDCL 62-3-2, the "arising from and in the course of employment" standard applies to determine both when an injured employee's exclusive remedy is the receipt of workers' compensation benefits and when a co-employee tortfeasor is entitled to immunity from liability.

> b. *Whether at the time of the injury to Ruhr, Wellnitz was an "employee" under SDCL 62-3-2 entitled to immunity from liability.*

[¶15.]     PR argues that notwithstanding the application of the less stringent

workers' compensation standard to assess Wellnitz's actions, Wellnitz was not an

"employee" of BHC at the time of Ruhr's injury, as that term applies under SDCL

62-3-2, and therefore, could not invoke immunity under the statute.

[¶16.]     In *Fair v. Nash Finch Co.*, 2007 SD 16, 728 NW2d 623, we summarized

the procedure for determining whether an injured employee is entitled to benefits

under the workers' compensation standard.

> A claimant who wishes to recover under South Dakota's
> Workers' Compensation Laws must prove by a
> preponderance of the evidence that [s]he sustained an
> injury 'arising out of and in the course of the employment.
> Both factors of the analysis, "arising out of employment"
> and "in the course of employment," must be present in
> all claims for workers' compensation.  The interplay of
> these factors may allow the strength of one factor to make
> up for the deficiencies in strength of the other.  These factors
> are construed liberally so that the application of the workers'
> compensation statutes is not limited solely to the times
> when the employee is engaged in the work that he was
> hired to perform.  Each of the factors is analyzed
> independently although they are part of the general inquiry
> of whether the injury or condition complained of is connected
> to the employment.

*Id*. ¶9 (internal citations omitted).

[¶17.]     Wellnitz backed her vehicle into Ruhr while Ruhr walked to her

vehicle, as she usually did, across the company parking lot adjacent to the BHC

facility where she was employed.  We have reviewed cases with comparable facts

and have held that similar employee injuries arose out of and within the course of

employment.  *See Fair*, 2007 SD 16, ¶¶17-18, 728 NW2d at 631 (convenience store

clerk fell while leaving the store in the usual manner after her shift following a

reasonable period of time to shop for groceries); Steinberg v. S.D. Dept. of Military

and Veterans Affairs, 2000 SD 36, ¶22, 607 NW2d 596, 603 (employee was injured from a fall on ice during her unpaid lunch hour while in the ordinary course of walking across a public street, between the situs of her employment and the employer provided parking lot where her car was located); Howell v. Cardinal Industries, Inc., 497 NW2d 709, 709 (SD 1993) (after leaving employer-designated exit following the completion of her shift, employee was injured by falling on the ice in employer's parking lot); *see also* Walz v. Fireman's Fund Ins. Co., 1996 SD 135, ¶¶1-2, 556 NW2d 68, 69 (reversing summary judgment dismissing employee's claim where employee was injured in a fall on the ice after exiting the workplace during an unpaid lunch). However, we assess whether Wellnitz's act of backing up her vehicle arose out of and in the course of her employment within the context of Ruhr's injury, which gave rise to the issue.

[¶18.]     We address the first factor of the workers' compensation standard by considering the following principles:

> In order for an injury to "arise out of" the employment, the employee must show that there is a causal connection between the injury and the employment. The employment need not be the direct or the proximate cause of the injury, rather it is sufficient if the accident had its origin in the hazard to which the employment exposed the employee while doing [her] work. The injury "arose out of" the employment if: 1) the employment contributes to causing the injury; 2) the activity is one in which the employee might reasonably engage; or 3) the activity brings about the disability upon which compensation is based.

Mudlin v. Hills Materials Co., 2005 SD 64, ¶11, 698 NW2d 67, 71-72 (internal citations omitted) (alteration in original).

[¶19.]     In the instant case, Wellnitz, like Ruhr, was employed with BHC. Like Ruhr, the situs of Wellnitz's employment was the BHC facility adjacent to the company parking lot. That Wellnitz was backing her vehicle out of her parking space to go home was a direct result of her having driven her vehicle to work earlier in the day and parking it in the company parking lot so that she could engage in her employment with BHC. Consequently, Wellnitz's employment with BHC contributed to the injury she caused Ruhr when she backed the vehicle into her.

[¶20.]     That Wellnitz's act arose out of her employment is further evident by the fact that her activities at the time of the injury to Ruhr were within those which might reasonably be expected of BHC employees under the circumstances. Wellnitz like Ruhr had just ended a 10:30 p.m. shift and had just left the BHC facility through the usual exit. Both employees, as one might reasonably expect, had parked their vehicles in the company parking lot adjacent to the BHC facility. That Wellnitz would walk across the parking lot, get in her vehicle and back out of the parking spot to drive away could be reasonably foreseen under the circumstances. Wellnitz's employment contributed to her activity that caused Ruhr's injury and her activities immediately preceding and during the injury-causing accident were within those that one might expect a BHC employee to reasonably engage. We therefore conclude that Wellnitz's injury causing activity arose out of her employment.

[¶21.]     We have interpreted the second factor in the workers' compensation analysis, "in the course of employment," to refer to the time, place and circumstances of the injury. *Mudlin*, 2005 SD 64, ¶15, 698 NW2d at 73 (quoting

Bearshield v. City of Gregory, 278 NW2d 166, 168 (SD 1979)).  Moreover we

recognized:

> An employee is considered within his course of employment
> if he is doing something that is either naturally or
> incidentally related to his employment or which he is either
> expressly or impliedly authorized to do by the contract
> or nature of the employment.

*Id.* (citations omitted).

[¶22.]     The injury causing accident occurred shortly after Wellnitz's and

Ruhr's shifts ended at 10:30 p.m.  The accident occurred in the company parking lot

adjacent to the BHC facility where Wellnitz and Ruhr were employed.  At the time

of the accident both employees were in the process of leaving work to go home for

the day.  That Wellnitz was in the company parking lot backing her vehicle out of

its parking spot at the time of the accident is both natural and incidental to her

employment.  Wellnitz was incidentally in the company parking lot because of her

employment in the adjacent BHC facility and she naturally would get in her vehicle

and back it out of her parking spot in order to go home at the end of her shift.

Moreover, there is no suggestion that Wellnitz was acting without authorization

when she parked in the company parking lot adjacent to the BHC facility, went to

her vehicle at the end of her shift, and then began to back out of her parking spot in

order to leave for home.  We conclude that Wellnitz's injury causing activity

occurred in the course of her employment.

[¶23.]     Having established that both elemental factors of the workers'

compensation standard were present in the context of Wellnitz's injury-causing act,

#24596

we hold that at the time of the accident she was an employee of BHC and within the

immunity under SDCL 62-3-2.[2]

[¶24.]      Affirmed.

[¶25.]      SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices,

concur.

---

2.    PR suggests that our holding today amounts to an adoption of the "premise
      rule" whereby the workers' compensation standard is satisfied by an
      employee's mere presence on the employer's premises prior to or after a work
      shift.  This interpretation is too broad.  Immunity under SDCL 62-3-2
      necessarily ends where an intentional tort begins.  Furthermore, we merely
      hold today that for purposes of satisfying the workers' compensation
      standard, there is an inconsequential distinction between an employee who
      receives benefits for an injury occurring in the company parking lot while
      making her way home following the conclusion of a shift and the co-employee
      tortfeasor who caused the injury and is also on her way home, but only a few
      moments ahead of the injured employee.