NEUHARTH, Appellant v. BRUNZ, Respondent

(181 N.W.2d 92)

(File No. 10764. Opinion filed November 17, 1970)

**Johnson & Johnson,** Gregory, for plaintiff-appellant.

**Herman & Wernke,** Gregory, for defendant-respondent.

HOMEYER, Judge.

Plaintiff appeals from a judgment which confirms defendant's title to certain real estate and personal property which she holds in joint tenancy with her mother, Christina Neuharth, now deceased.

Plaintiffs in this and two other actions consolidated for trial seek to invalidate the conveyances and transfers through which defendant acquired such title and a determination that the property is an asset of the estate of Christina Neuharth and subject to the terms of her will. Emil Neuharth, plaintiff in this and one other action, Edward Neuharth and Mollie Kahler who with him are plaintiffs in a third action, and the defendant, Emma Brunz, are children of Christina Neuharth and Henry Neuharth, both deceased A sister, Anna Neuharth, an incompetent, appears by a guardian ad litem.

On February 26, 1963, Henry Neuharth executed a will at his home in Burke, South Dakota, which omitting the usual opening paragraph, signature and attestation clause reads:

> "FIRST: I desire that all of my just debts, expenses of last sickness and funeral expenses be paid by my coexecutors hereinafter named as soon after my death as may be convenient.

> SECOND: I hereby nominate and appoint my son, Emil Neuharth, and my daughter, Emma Brunz, as coexecutors of this my last will and testament, and I desire that they act in said capacity without bond.

THIRD: I give, devise and bequeath to my son Edward Neuharth, my son, Emil Neuharth, my daughter, Mollie Kahler, and my daughter, Emma Brunz, as co-trustees, in trust only, all of my property, real, personal or mixed and wherever located, to be held in trust and used for the support and benefit of my wife, Christina Neuharth, and my daughter, Anna Neuharth, so long as either of them shall live.

FOURTH: After the life interest in the above trust has terminated by the death of both of the beneficiaries above named, I then give, devise and bequeath the remainder of said trust to Edward Neuharth, Mollie Kahler, Emil Neuharth and Emma Brunz, in equal shares.

FIFTH: In the event of the inability or unwillingness of the trustees herein named to act as trustees, then in such event I direct the Court having jurisdiction to appoint a corporate trustee with bond.

SIXTH: I hereby revoke and cancel all previous wills or codicils thereto by me made."

At the same time and place Christina Neuharth executed a similar will with her husband Henry's name substituted for hers wherever it appears in the above will. The makers retained possession of the wills after execution. Henry's will was probated after his death. Christina's could not be found after her death, but an unexecuted copy was obtained from the law office of the draftsman and appears in the record. There is no dispute as to its contents or execution.

On May 20, 1963, Henry Neuharth executed and delivered to his wife Christina, a warranty deed to the family home in Burke, which is the real estate here involved. On the same day with the apparent knowledge and consent of Henry she redeemed ten U.S. Series E Bonds registered in their names for a total sum of $9,470.80. From the proceeds she purchased a $5,000 Certificate of Deposit in a Gregory, South

Dakota bank, payable to "herself or Emma Brunz, either or survivor". On the same date, the balance in a joint checking account of Henry and Christina, and the balance of the proceeds from the redemption of the government bonds, making a total of $6,481.21, was deposited in a new checking account in the same bank in the names of Christina Neuharth or Emma Brunz. They both signed the bank signature card dated May 20, 1963. Thereafter both wrote checks on this account until Christina's death about three and one-half years later.

Henry Neuharth died on June 27, 1963 and the will described, supra, was probated. Listed as assets of the estate were a one-half interest in an old Chrysler automobile, a one-half interest in 160 acres of land which had been sold under contract for deed and a one-half interest in the family home heretofore mentioned, which had been transferred to Christina Neuharth in contemplation of death necessitating a determination of inheritance taxes. Emma Brunz acted as executrix, Emil Neuharth having renounced his right to act, and the estate was distributed on January 28, 1964 without objection. On February 21, 1964, Christina conveyed the family home to herself and Emma Brunz as joint tenants with right of survivorship and not as tenants in common. The certificate of deposit and the balance in the checking account and the family home are the subject matter of this litigation.

Plaintiff-appellant contends the trial court erred in entering judgment for the defendant when (1) the preponderance of the evidence establishes a valid family agreement for the disposition of the property of Henry and Christina Neuharth agreed to and ratified by defendant, Emma Brunz; (2) absent sufficient proof of (1), the preponderance of the evidence shows an agreement between Henry and Christina to make wills which would make available their residuary estates for the support of the incompetent daughter, Anna; and (3) the preponderance of the evidence shows defendant obtained her interest in such property by the exercise of undue influence. The assignments of error will be considered in the above order.

As an appellate court we may not disturb the findings of the trial court unless we are satisfied that they are clearly erroneous. SDCL 15-6-52(a).

### I.

■ Family agreements relative to the distribution of property of decedents have long been recognized in this state and are not contrary to public policy. If fairly made they are binding and enforceable according to their terms. It has frequently been said the law looks with favor upon such family compromises. In re Vasgaard's Estate, 62 S.D. 421, 253 N.W. 453; Moncur v. Jones, 72 S.D. 202, 31 N.W.2d 759; Johnson v. Tomlinson, N.D., 160 N.W.2d 49, 31 Am.Jur.2d, Executors and Administrators, § 12, 15A C.J.S. Compromise and Settlement § 3b.

■ An essential and indispensable element necessary to a binding agreement on a family settlement is the presence of some interest in the subject matter which is the basis for the settlement or compromise. This is lacking in the case at bar. So long as Henry and Christina were both alive, their children possessed no interest in their property or property which might become a part of their estates. Consideration and other elements which sometimes give rise to an estoppel are not here present. See Henrich v. Newell, 59 S.D. 372, 240 N.W. 327.

■ The evidence shows little more than the presence of the children or some of them in the office of the lawyer draftsman when the wills and proposed contents were discussed. The record is clear Christina was not present during this discussion. A few days later the wills were executed in the family home with the draftsman and children present. Assuming the parties present had precise knowledge of these wills and their contents, nevertheless this does not give rise to a binding agreement on the part of anyone from later claiming contrary to what may have been contained in the wills. Neither does it prevent the testators from an alteration or revocation of the prior contemplated disposition.

■ Joint, reciprocal and mutual wills are ambulatory and revocable until the death of those making them. SDCL

29-2-4. Generally, they are without legal effect upon the property of the testators until that time. Dawson v. Corbett, 71 S.D. 106, 21 N.W.2d 758.

## II.

Alternately plaintiff-appellant argues the evidence establishes an oral agreement between Henry and Christina to create a trust for the benefit of the incompetent daughter, Anna. He contends the execution of the wills described supra and the circumstances surrounding their execution resulted in an irrevocable contract between Henry and Christina that their property should descend in the manner set forth in such wills.

Much has been written about joint, reciprocal and mutual wills and these terms have been used indiscriminately in many decisions. For definition and clarification see Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 106 N.W.2d 637, 97 C.J.S. Wills § 1364.

While there is some conflict in the decisions, the weight of authority including this jurisdiction has followed the rule that the fact parties have concurrently executed separate wills, reciprocal in terms, is not sufficient, of itself, to show that the parties had entered into a contract to make such wills, but the terms of such wills afford some evidence of the contractual relation and, when read in connection with other evidence which tends to show the execution of the contract may establish that fact. Annot., 169 A.L.R. p. 74; Page on Wills, Bowe-Parker Revision, § 10.4 p. 444; Beveridge v. Bailey, 53 S.D. 98, 220 N.W. 462, rehearing 53 S.D. 382, 220 N.W. 868; In re Pennington's Estate, 158 Kan. 495, 148 P.2d 516.

In Beveridge, where the instrument was a conjoint will, the court said: "No proof aliunde the will is necessary if the will, unaided, proves the contract. But the contract must be proven, and, if it cannot be proven by the will because the will does not contain sufficient matter to disclose its terms, then other proof must be made, not because the will alone is incompetent to prove it, but because it is insufficient." See also In re Logan's Estate, 253 Iowa 1211, 115 N.W. 2d 701.

274

The burden of proof was upon the plaintiff to prove the contract by evidence so clear and satisfactory to the mind of the trial court as to leave no doubt as to an agreement. Ward v. Melby, 82 S.D. 132, 142 N.W.2d 526.

■ As we said in Division I the evidence shows little more than the presence of the parents and their children when the reciprocal wills were executed and some knowledge of the contents. The lawyer draftsman did not testify. There is some conflict on whether both wills were read or only one of them. The Neuharths had very limited education and generally conversed in German. Christina could barely read. There is nothing in the wills indicating that they were executed pursuant to an irrevocable agreement. On the contrary, the evidence shows Henry conveyed his interest in the family home to Christina before her death removing that property from his estate. The redemption of the bonds and the other transfers are evidence and give rise to inferences which tend to dispel the agreement contended for by appellant. Accepting the premise that Henry and Christina were greatly concerned with the welfare of Anna after their demise, it can be concluded they may have felt this could best be accomplished in the manner used for the disposition of their modest material holdings.

We find no error in the trial court's determination that plaintiff had failed to establish an irrevocable agreement for the disposition of their property in the manner set forth in the reciprocal wills.

### III.

■ We have carefully reviewed the evidence on undue influence. The governing principles on a claim of undue influence have been stated many times and were recently repeated in In re Blake's Estate, 81 S.D. 391, 136 N.W.2d 242. No purpose would be served in restating those principles or reviewing the evidence in the light thereof. Suffice it to say we are satisfied the court's determination that the plaintiff had failed to prove undue influence on the part of the defendant was not clearly erroneous.

Affirmed.

All the Judges concur.