Unified Judicial System

 

 
 Watertown Concrete Products, Inc., a South Dakota Corporation
Plaintiff and Appellee
v.
Thomas Foster, Executor of the Estate of Ramsey Marlowe Foster, Deceased,
Defendant and Appellant
[2001 SD 79]
South Dakota Supreme Court
Appeal from the Circuit Court of The Third Judicial Circuit
Clark County, South Dakota
Hon. Robert L. Timm, Judge
J. Douglas Austin Austin, Hinderaker, Hopper Strait & Bratland Watertown, South Dakota
Attorneys for plaintiff and appellee
 
Robert M. Ronayne Ronayne and Wein Aberdeen, South Dakota
Attorneys for defendant and appellant
 
Considered on Briefs May 29, 2001
Opinion Filed 6/20/2001
#21688
KONENKAMP, Justice
[Â¶1.] This is a creditor's action against an estate.  Probate proceedings were commenced before the effective date of the Uniform Probate Code (UPC), but this action was brought after the codeâs effective date.  The question is which law applies.  We affirm the trial court's conclusion that the plain language of SDCL 29A-8-101 requires that this action be governed by the UPC.  
A.
[Â¶2.] Ramsey Marlowe Foster died on August 6, 1993.  His sons, Thomas and Rodney Foster, were appointed co-executors.  In August 1995, while probate proceedings were still open, Rodney placed an order for concrete with Watertown Concrete Products, Inc.  He told the company's bookkeeper to bill him for the concrete and deliver it to his girlfriend's property.[1]   Rodney placed another order at Watertown Concrete in September 1995.  Seven concrete deliveries were made to a parcel of property held by the estate.  Rodney was feeding cattle on that parcel.  The concrete was used to create a driveway leading to the feed bunks.  He had the concrete billed to the Ramsey Marlowe Foster Estate at his home address.  Thomas, Rodneyâs brother and co-executor, later admitted that he knew concrete was being delivered to the property, but denied knowing that it was being billed to the estate.
[Â¶3.] The Watertown Concrete employee who took the September order testified that Rodney described the property as âhis place.â  Rodney did not own it, but he anticipated that he would eventually receive it as his inheritance.  He failed to explain that he was a co-executor and that another executor had to concur with his order.  Although the company employee had never taken a concrete order from an estate before, she did not require any written proof of authority.  She simply followed her bossâs instructions to âhandle every customer the same.â  
[Â¶4.] In February 1996, Rodney filed for bankruptcy.  Because Watertown Concrete had not received payment for the concrete it had delivered, it submitted two separate proofs of claim in bankruptcy court.  One claim related to the August order delivered to the property owned by Rodneyâs girlfriend, the other, to the September order delivered to the estate property.  Attached to the September proof of claim was the following explanation:
Concrete for which this claim is being made was all ordered by Rodney Foster, co-personal representative of the estate of R. [Marlowe] Foster.  The claimant, Watertown Concrete Products, Inc., has been unable to determine whether or not the R. [Marlowe] Foster Estate will accept responsibility for payment of the outstanding . . . bill, thus the reason for the protective filing.
 
The bankruptcy trustee objected to both claims, asserting that the September order was the responsibility of the estate and the August order was for a site not owned by Rodney.
[Â¶5.] At the same time, the estate maintained that it was not liable because Rodney was only a co-executor and he had incurred estate debts without Thomasâs authority.  The estate also contended that the concrete served no estate business purpose.  After negotiations with the trustee, Watertown Concrete withdrew its claim for the September deliveries.  In its order, the bankruptcy court noted that Watertown Concrete had agreed that the claim for the September deliveries was âa claim against the R. [Marlowe] Foster estate.â  On August 6, 1996, Watertown Concrete brought this collection proceeding against the estate, seeking its unpaid bill for the September deliveries.  After a bench trial, the circuit court found against the estate and entered judgment for $4,592.64 plus interest.[2]   The estate appeals.
B.
[Â¶6.] The estate contends that SDCL 30-8-15 (now repealed) prohibited an executor from binding an estate on obligations made without the written concurrence of the co-executor.  Conversely, Watertown Concrete argues that SDCL 30-8-15 is inapplicable because the provisions of South Dakota's UPC govern this dispute.  See SDCL 29A-1-101.  The transitional rules governing the application of UPC provisions to particular proceedings are set out in SDCL 29A-8-101.  The determination of which law applies presents a question of statutory interpretation reviewable de novo on appeal.  Maryott v. First National Bank of Eden, 2001 SD 43, Â¶17, 624 NW2d 96, 102 (citations omitted); Faircloth v. Raven Industries, Inc., 2000 SD 158, Â¶4, 620 NW2d 198, 200 (citations omitted).
[Â¶7.] Under the facts of this case, SDCL 29A-8-101(b)(3) is the applicable provision:
This code [the UPC] applies to any proceedings in court commenced on or after July 1, 1995, regardless of the date of the decedentâs death.  Notwithstanding the repeal of Titles 29 and 30, the provisions of prior law continue to apply to any proceedings pending on July 1, 1995, except to the extent that the court, following a petition therefor, orders that the procedures prescribed in this code be made applicable[.]  
 
(emphasis added).  According to this statute, the UPC applies to âany proceedings in courtâ which were commenced after the UPCâs effective date.  This date is determinative regardless of the decedentâs date of death.  It is undisputed that Watertown Concreteâs collection action commenced on August 6, 1996, more than one year after the UPCâs effective date.  Consequently, the plain language of the statute requires application of the UPC and not prior law.  See South Dakota Subsequent Injury Fund v. Federated Mutual Ins. Inc., 2000 SD 11, Â¶17, 605 NW2d 166, 169 (citations omitted).
[Â¶8.] The estate relies on the date that Thomas and Rodney Foster were appointed co-executors to make its point that SDCL 30-8-15 should be applied.  Since Thomas and Rodney were named co-executors on March 21, 1994, the estate argues that the second sentence of SDCL 29A-8-101-(b)(3) is triggered and prior law should govern this pending probate case.  Thus, the estate urges us to interpret the statute as requiring application of the UPC only when a probate proceeding is commenced after July 1, 1995.  This interpretation stands at odds with the statutory language âany proceedings in court.â  See SDCL 29A-8-101(b)(3).  The code defines âproceedingâ as including âaction[s] at law and suit[s] in equity.â  SDCL 29A-1-201(37).  Watertown Concrete did not file a claim in the probate case; instead, it brought an action to collect money due.  This separate proceeding was commenced on August 6, 1996, so the action is governed by the UPC.
[Â¶9.] Under South Dakotaâs UPC, the term âpersonal representativeâ includes executors, administrators, successor personal representatives, and special administrators.  See SDCL 29A-1-201(34).  Generally, when two or more persons are appointed, a concurrence of the majority is required for all acts involving the administration or distribution of the estate.  SDCL 29A-3-717.  There is, however, a specific statutory exception to this rule.  If a person dealing with a co-representative is âactually unawareâ that other representatives exist, that person is âas fully protected as if the person with whom they dealt [had] been the sole personal representative.â  See SDCL 29A-3-717.  Watertown Concrete offered undisputed evidence that it had no knowledge of Rodneyâs status as a co-executor; therefore, it was protected as if Rodney had been the sole representative.  See SDCL 29A-3-717.
C.
[Â¶10.] When a party successfully maintains a certain position in a legal proceeding, judicial estoppel precludes that party from later assuming a contrary position simply because that partyâs interests have changed, especially if the change works to the prejudice of one who acquiesced in the position formerly taken by that party.  New Hampshire v. Maine, __ US __, __, 121 SCt 1808, 1814, __ LEd __, __ (2001)(citing Davis v. Wakelee, 156 US 680, 689, 15 SCt 555, 558, 39 LEd 578 (1895)).  The estate contends that Watertown Concrete's position in this action is inconsistent with its posture in the bankruptcy case.  See Federal Land Bank of Omaha v. Johnson, 446 NW2d 446, 447 (SD 1989)(citations omitted); see also State v. St. Cloud, 465 NW2d 177, 180 (SD 1991).
[Â¶11.] This Court has not specifically enumerated its standard of review for questions of judicial estoppel.  We have, however, recognized that in reviewing the application of the doctrine of equitable estoppel, we are presented with a fully reviewable mixed question of law and fact.  See Crouse v. Crouse, 1996 SD 95, Â¶14, 552 NW2d 413, 417 (equitable estoppel is reviewed de novo)(citations omitted).  Judicial estoppel should be reviewed in the same manner.  Accord Kelsey v. Waste Management of Alameda County, 90 CalRptr2d 510, 514-515 (CalCtApp 1999)(judicial estoppel reviewed de novo).[3] 
[Â¶12.] Judicial estoppel cannot be reduced to an equation, but courts will generally consider the following elements in deciding whether to apply the doctrine:  the later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.  New Hampshire, __US at  __, 121 SCt at 1815, __ LEd2d at ___; see also Gesinger v. Gesinger, 531 NW2d 17, 21 (SD 1995); see also St. Cloud, 465 NW2d at 180.  The core question here is whether Watertown Concrete took inconsistent positions.  See New Hampshire, __ US at __, 121 SCt at 1815, __ LEd2d at __.  See also St. Cloud, 465 NW2d at 179.
[Â¶13.] In its initial claim for payment on the September deliveries, Watertown Concrete represented that it â[had] been unable to determine whether or not the R. [Marlowe] Foster Estate [would] accept responsibility for payment.â  Thus, it labeled its claim a protective filing.  When the bankruptcy trustee objected, Watertown Concrete responded by explaining that the estate denied responsibility, thus it believed the claim was viable.  After this, however, Watertown Concrete withdrew the claim on the September deliveries.  The bankruptcy court recognized that the reason for withdrawal of the claim was that it was âin fact, a claim against the R. [Marlowe] Foster Estate.â  This position was consistent with the one Watertown Concrete asserted in the present case.  As there was no inconsistency in positions, grounds for judicial estoppel have not been established.  See Gesinger, 531 NW2d at 21-22.
D.
[Â¶14.] The estate urges us to remand to the circuit court because the findings that were entered âwere devoid of any actual findings which might aid a reviewing Court.â  The estate relies on SDCL 15-6-52(a), which requires the circuit court to âfind the facts specially and state separately its conclusions of law.â  The purpose of requiring specific findings is to ensure meaningful appellate review.  See Linard v. Hershey, 516 NW2d 304, 306 (SD 1994)(citations omitted).  In this appeal, the underlying facts were largely undisputed, leaving only legal questions to resolve.  Therefore, the absence of detailed factual findings in no way hampered our review and remand for more specific findings would be unnecessary. 
[Â¶15.] Affirmed.
[Â¶16.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur. 

[1].         That transaction is not at issue in this appeal.  Rodneyâs liability for this concrete order was discharged in bankruptcy.

[2].         On December 4, 1996, Rodney Foster was removed as co-executor of his fatherâs estate.

[3].         See also United States v. Hook, 195 F3d 299, 305 (7thCir 1999)(citations omitted).