#25144-a-GAS

**2010 SD 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STACIE WILCOX f/k/a Stacie
Sheesley, Personal
Representative of the
Estate of Shane Sheesley,                                        Plaintiff and Appellee,

v.

DEE ANN VERMEULEN, as Personal
Representative of the Estate
of Thomas Vermeulen,                                             Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JANINE M. KERN
Judge
\* \* \* \*

JAMES W. OLSON of
Wilson, Olson & Nash, PC
Rapid City, South Dakota                          Attorneys for plaintiff
                                                  and appellee.


DENNIS W. FINCH of
Finch Maks, Prof. LLC
Rapid City, South Dakota                          Attorneys for defendant
                                                  and appellant.


\* \* \* \*

ARGUED OCTOBER 6, 2009
REASSIGNED JANUARY 5, 2010

OPINION FILED **3/31/10**

#25144

SEVERSON, Justice (on reassignment).

[¶1.]    The proceeds from the settlement of multiple wrongful death lawsuits were paid into the Sheesley, Vermeulen, Bielstein Trust (SVB Trust) to be held pending a distribution of the funds.  Stacie Wilcox, f/k/a Stacie Sheesley, personal representative of the Estate of Sheesley, brought this declaratory judgment action seeking to divide the corpus of the SVB Trust between its beneficiaries, the Estates of Sheesley and Vermeulen.  The trial court distributed the corpus of the SVB Trust, but did not allow Dee Ann Vermeulen, personal representative of the Estate of Vermeulen, to present additional expert testimony in this distribution proceeding based on judicial estoppel.  Vermeulen appeals.  We affirm.

## BACKGROUND

[¶2.]    Shane Sheesley, Thomas Vermeulen, and Robert Bielstein died as a result of injuries sustained in an aircraft accident near Mission, South Dakota, on August 23, 2000.  The decedents' estates filed wrongful death actions against numerous defendants whose identities are not relevant to this appeal.  In deciding to sue, the Estates of Sheesley and Vermeulen retained common attorneys, while the Estate of Bielstein hired separate counsel.  One wrongful death lawsuit was initiated in state court in Hughes County, South Dakota, and the other two suits were initiated in federal court in the United States District Court, District of South Dakota.

[¶3.]    In order to prove damages in both wrongful death lawsuits, the Estates of Sheesley and Vermeulen hired Donald Frankenfeld, a forensic economist, to testify to the economic losses of the Estates.  Neither estate provided expert

-1-

testimony as to non-economic losses, which include "the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection[.]'" Zoss v. Dakota Truck Underwriters, 1999 SD 37, ¶11, 590 NW2d 911, 913-14 (quoting Sander v. Geib, Elston, Frost Prof'l Ass'n, 506 NW2d 107, 119 (SD 1993) (quoting Flagtwet v. Smith, 367 NW2d 188, 191 (SD 1985))).

[¶4.] Before the wrongful death lawsuits were decided on their merits, all parties and lawsuits settled out-of-court. The wrongful death lawsuit brought in state court settled for $2,500,000.00, and the federal lawsuit settled for $950,000.00. Both settlements were approved by the respective courts and placed in the SVB Trust. A separate settlement of $200,000.00 was reached with one defendant. This amount was not placed in the SVB Trust, but was distributed equally between the Estates of Sheesley and Vermeulen prior to the distribution proceeding leading to this appeal. After deduction of the Estate of Bielstein's award, court costs, and attorneys' fees from the SVB Trust, the remaining corpus of the trust ($1,625,872.00) was insufficient to make the Estates of Sheesley and Vermeulen whole. Further, the trust agreement did not provide a formula for dividing the trust corpus, and the parties could not agree on the distribution.

[¶5.] Stacie Wilcox (Wilcox), the personal representative of the Estate of Sheesley, brought this declaratory judgment action in the trial court seeking to divide the corpus of the SVB Trust between the Estates of Sheesley and Vermeulen. Dee Ann Vermeulen (Vermeulen), the personal representative of the Estate of Vermeulen, sought leave of court to present additional expert testimony in this

distribution proceeding. In response, Wilcox argued that both parties pursued the defendants together using one team of lawyers and one expert, Frankenfeld; that throughout the litigation, the parties relied on the opinion of Frankenfeld when making trial and settlement decisions; and, that based on a theory of estoppel, Vermeulen was prohibited from taking an "inconsistent position" by proffering a different expert in this distribution proceeding. The trial court agreed and did not allow the additional expert testimony based on judicial estoppel.

[¶6.] At the hearing concerning the distribution of the SVB Trust and other settlement proceeds, the trial court made findings of fact based on the stipulated record from the previous state and federal cases. The stipulated record included the depositions and testimony of the two widows and the economic expert, Frankenfeld. Ryan Vermeulen and Karla Vermeulen Taylor, Vermeulen's children, also testified at this hearing to aid the trial court in determining non-economic losses. Based on the economic losses determined by Frankenfeld and the non-economic losses determined by the trial court, the trial court distributed 87% of the SVB Trust to the Estate of Sheesley (Stacie Wilcox and Shelbie Sheesley Wilcox) and 13% to the Estate of Vermeulen. The trial court allocated 9.75% of the Estate of Vermeulen to Dee Ann Vermeulen, 1.95% to Ryan Vermeulen, and 1.3% to Karla Vermeulen Taylor.

**STANDARD OF REVIEW**

[¶7.] "Admission of expert testimony is within the broad discretion of the trial court." Thompson v. Mehlhaff, 2005 SD 69, ¶21, 698 NW2d 512, 519 (citing Schrader v. Tjarks, 522 NW2d 205, 209 (SD 1994); Stormo v. Strong, 469 NW2d

816, 820 (SD 1991)).  "A trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion."  *Id.* ¶21, 698 NW2d at 519-20 (citing *Stormo*, 469 NW2d at 820).  As this Court noted in *State v. Asmussen*:  "With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence."  2006 SD 37, ¶13, 713 NW2d 580, 586 (citing State v. Guthrie, 2001 SD 61, ¶30, 627 NW2d 401, 415 (citing Koon v. United States, 518 US 81, 100, 116 SCt 2035, 2047, 135 LEd2d 392 (1996))).  "In addition to showing an abuse of discretion, [Vermeulen] must show that the excluded evidence might and probably would have resulted in a different verdict."  *Thompson*, 2005 SD 69, ¶21, 698 NW2d at 520 (citing *Schrader*, 522 NW2d at 209-10).  Finally, the proponent of excluded evidence must make the substance of the evidence known to the trial court by making an offer of the excluded evidence at trial or prior to trial by an offer of proof.[1]  *Id.* (citing Joseph v. Kerkvliet, 2002 SD 39, ¶7, 642 NW2d 533, 535 (quoting State v. Norville, 23 SW3d 673, 685 (MoCtApp 2000))).

---

1.      SDCL 19-9-3 (Rule 103(a)) provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
> (1)      In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
> (2)      In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
> Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

## ANALYSIS AND DECISION

[¶8.]    1.    **Whether the trial court erred by applying judicial estoppel to deny Vermeulen's motion to offer additional expert testimony.**

[¶9.]    We must first address Vermeulen's argument that the trial court erred by denying her motion to offer additional expert testimony in this distribution proceeding. Wilcox argued that based on a theory of estoppel, Vermeulen was prohibited from taking an "inconsistent position" by proffering a different expert for distribution purposes.

> To create an estoppel, there must have been some act or conduct upon the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights.

A-G-E Corp. v. State, 2006 SD 66, ¶32, 719 NW2d 780, 789 (quoting Western Cas. and Sur. Co. v. Am. Nat'l Fire Ins. Co., 318 NW2d 126, 128 (SD 1982) (quoting Somers v. Somers, 27 SD 500, 504, 131 NW 1091, 1093 (1911))). "Estoppel will be applied against a party 'who by [his] words or conduct take[s] positions inconsistent with [his] rights, unfairly misleading others into detrimental reliance.'" *Id.* (quoting Harms v. Northland Ford Dealers, 1999 SD 143, ¶17, 602 NW2d 58, 62) (additional citations omitted).

[¶10.]    The trial court ruled that because both parties pursued the defendants together with one expert and relied on that expert's opinion in making trial and settlement decisions, Vermeulen was judicially estopped from offering a different

expert in this distribution action. This Court has considered the following elements in deciding whether to apply judicial estoppel:

> [T]he later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

Canyon Lake Park, L.L.C. v. Loftus Dental, P.C., 2005 SD 82, ¶34, 700 NW2d 729, 737 (quoting Watertown Concrete Prod., Inc. v. Foster, 2001 SD 79, ¶12, 630 NW2d 108, 112-13 (citing New Hampshire v. Maine, 532 US 742, 750, 121 SCt 1808, 1814-15, 149 LEd2d 968, 977)) (additional citations omitted). Vermeulen now argues that the retention of a separate expert was necessary because Frankenfeld did not consider the non-economic losses to the parties or the economic losses to Vermeulen's children.

[¶11.] Wilcox brought this declaratory judgment action because the trust agreement did not provide a formula for dividing the trust corpus and the parties could not agree on the distribution. The trial court addressed two tasks in this action. First, the complaint was filed under SDCL 21-24-5 to divide the corpus of the SVB Trust between its beneficiaries,[2] the Estates of Sheesley and Vermeulen.

---

2.     SDCL 21-24-5 provides:

> Any person interested as or through a personal representative, trustee, conservator, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the administration of a trust, or of the estate of a decedent, minor, protected person, or insolvent, may have a declaration of rights or legal relations in respect thereto:
>     (1)     To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

<span style="text-align:center">(continued . . .)</span>

A second related issue was the allocation between the two beneficiaries of the Estate of Sheesley and among the three beneficiaries of the Estate of Vermeulen based on SDCL 21-5-8.[3]

[¶12.]    The trial court divided the corpus of the SVB Trust between its beneficiaries with 87% to the Estate of Sheesley and 13% to the Estate of Vermeulen.  The amount of distribution to each estate was based on the trial court's determination of pecuniary loss to each estate.  "[P]ecuniary losses include both economic and non-economic losses[.]"  Dakota Plains A.G. Ctr., L.L.C. v. Smithey, 2009 SD 78, ¶13, 772 NW2d 170, 177 (citing Zoss, 1999 SD 37, ¶¶11-15, 590 NW2d at 913-14).  In the present action, non-economic loss was based primarily on the testimony of family members.  Frankenfeld testified to economic loss using life expectancy and estimations of earning capacity.  The Estate of Sheesley's damages were calculated as greater than the Estate of Vermeulen's damages because

---

(. . . continued)
    (2)    To direct the personal representatives or trustees to do or abstain from doing any particular act in their fiduciary capacity;

    (3)    To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

3.    SDCL 21-5-8 provides:

    The amount received by such personal representative, whether by settlement or otherwise, shall be apportioned among the beneficiaries, unless adjusted between themselves, by the court making the appointment, in such manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries.

Sheesley was younger and had more years of lost earnings, and also because Sheesley had a greater earning capacity than Vermeulen.

[¶13.] The trial court also allocated each estate between or among its beneficiaries. The allocation within the Estate of Sheesley between its two beneficiaries, the wife and daughter of Sheesley, was delayed pending appointment of a guardian ad litem as the daughter, Shelbie Sheesley Wilcox, was a minor. This matter was not appealed. The trial court allocated loss among the beneficiaries of the Estate of Vermeulen with 75% to Vermeulen's wife, Dee Ann Vermeulen; 15% to his son, Ryan Vermeulen; and 10% to his daughter, Karla Vermeulen Taylor. The allocation among the beneficiaries of the Estate of Vermeulen was not appealed.

[¶14.] In wrongful death actions, damages may be awarded proportionally based on pecuniary injuries under SDCL 21-5-7.[4] "[P]ecuniary injury encompasses more than strictly economic losses[.]" *Dakota Plains A.G. Ctr.*, 2009 SD 78, ¶29, 772 NW2d at 181 (quoting *Zoss*, 1999 SD 37, ¶11, 590 NW2d at 913). "[I]t includes 'the loss of decedent's companionship and society as expressed by, but not limited to, the words "advice," "assistance," and "protection," but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death.'" *Id.* (quoting *Zoss*, 1999 SD 37, ¶11, 590 NW2d at 913-14).

[¶15.] The parties submitted evidence relevant to their pecuniary losses at trial in this distribution action. This evidence included the testimony of Ryan

---

4. SDCL 21-5-7 provides: "In every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought."

Vermeulen and Karla Vermeulen Taylor. The trial court also considered stipulations, exhibits, and transcripts of testimony of Wilcox, Vermeulen, and Frankenfeld in depositions and at trial in proceedings before the Sixth Judicial Circuit Court, Hughes County, South Dakota, and in discovery in United States District Court, District of South Dakota, Southern Division. Finally, the trial court considered Frankenfeld's report and the summary of the case submitted by attorney Bart Banks, who represented both parties in the wrongful death actions. Both parties submitted briefs and argument of counsel.

[¶16.] Prior to trial, Vermeulen moved to submit further expert testimony on economic damages, but he did not make an offer of proof as to the substance of the proposed evidence, explain how that evidence would assist the trial court, or even name an expert. To be admissible, an expert's opinion must assist the trier of fact.[5] SDCL 19-15-2. Vermeulen focuses on Frankenfeld's testimony concerning the economic portion of the pecuniary injury. Frankenfeld calculated the economic loss suffered by each estate based on Sheesley's and Vermeulen's lost earning potential over what would have been their expected life span. Economic loss generally is comprised of lost lifetime earnings. No evidence was presented to support economic

---

5.    SDCL 19-15-2 (Rule 702) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

loss more than the amounts Sheesley or Vermeulen could have earned during their lifetime less their consumption.

[¶17.]      Vermeulen argues Frankenfeld was remiss in not specifically addressing Ryan Vermeulen's economic loss and in not calculating non-economic pecuniary loss. Ryan Vermeulen was eighteen at the time of his father's death but was a high school student living at home and was still dependent on his father's support. Because the Estate of Vermeulen's economic loss was based on potential earnings, the Estate's economic losses do not increase simply by showing that more family members were injured or suffered an economic loss. The trial court specifically found Ryan Vermeulen had an economic loss and considered that evidence in the allocation within the Estate of Vermeulen.

[¶18.]      At the trial before Judge Kern, Ryan Vermeulen and Karla Vermeulen Taylor testified as to the non-economic pecuniary losses they suffered. In the trial court's findings, damages were allocated based on total pecuniary loss, both economic loss and non-economic loss. The differences in their relationships with their father would have affected allocation, a fact recognized by the trial court's decision. Vermeulen made no showing at the motion hearing or at the trial as to the nature or relevance of any proposed expert testimony on non-economic loss.

[¶19.]      Vermeulen contends the trial court erred in refusing further expert testimony based on judicial estoppel. Wilcox argued such evidence should not be allowed based on principles of estoppel since the corpus of the SVB Trust consisted of settlements reached by the parties where they jointly presented evidence of economic loss based on the testimony of the same forensic economist, Frankenfeld.

Even if the trial court was not technically correct in using judicial estoppel rather than promissory estoppel[6] or equitable estoppel,[7] this is not an error that requires that we reverse the trial court's decision.

[¶20.]     We should not reach that issue because Vermeulen failed to make an offer of proof as to the evidence that would be presented and the substance of the

---

6.     Wilcox argues that promissory estoppel prevents Vermeulen from presenting additional expert testimony in this distribution proceeding. "This Court has held that 'promissory estoppel may be invoked where a promisee alters his position to his detriment in the reasonable belief that a promise would be performed.'" *Canyon Lake Park*, 2005 SD 82, ¶38, 700 NW2d at 739 (quoting Garrett v. BankWest, Inc., 459 NW2d 833, 848 (SD 1990) (citing Minor v. Sully Buttes Sch. Dist. No. 58-2, 345 NW2d 48, 51 (SD 1984))). The elements of promissory estoppel are as follows:

> (1)     The detriment suffered in reliance must be substantial in an economic sense;
> (2)     The loss to the promise must have been foreseeable by the promisor; and
> (3)     The promisee must have acted reasonably in justifiable reliance on the promise made.

*Id.* Wilcox asserts that each of these elements is established in the present case.

7.     In order to constitute equitable estoppel,

> (1)     False representations or concealment of material facts must exist;
> (2)     The party to whom it was made must have been without knowledge of the real facts;
> (3)     The representations or concealment must have been made with the intention that it should be acted upon; and
> (4)     The party to whom it was made must have relied thereon to his prejudice or injury.

Hahne v. Burr, 2005 SD 108, ¶17, 705 NW2d 867, 873 (quoting Cleveland v. Tinaglia, 1998 SD 91, ¶38, 582 NW2d 720, 727). Equitable estoppel cannot exist "if any of these essential elements are lacking, or if any of them have
(continued . . .)

evidence was not apparent from the context. *Thompson*, 2005 SD 69, ¶21, 698 NW2d at 520 (citations omitted). *See* City of Sioux Falls v. Kelley, 513 NW2d 97, 108 (SD 1994) (citing Crilly v. Morris, 70 SD 584, 19 NW2d 836 (1945)) ("Where there has been no offer of proof on excluded testimony, and it is impossible to determine whether the party has been prejudiced by the court's ruling, the contention that the court erred in excluding testimony has not been preserved for appeal."). Neither the trial court nor this Court should speculate as to the substance of the proposed evidence. This was an evidentiary ruling that should not be reversed because there was not a clear abuse of discretion.

[¶21.] In addition, Vermeulen failed to show "that the excluded evidence might and probably would have resulted in a different verdict," or even that the expert testimony would assist the trial court. *See Thompson*, 2005 SD 69, ¶21, 698 NW2d at 520 (citations omitted). "Findings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous." SDCL 15-6-52(a). The trial court entered detailed Findings of Fact and Conclusions of Law. The trial court's findings of fact were methodical and supported by the evidence.

[¶22.] **2. Whether the trial court erred by considering the $93,333.00 distribution to each estate an interim distribution.**

[¶23.] Vermeulen also argues that the trial court erred by considering the $93,333.00 distribution to the Estates of Sheesley and Vermeulen an interim

_____

(. . . continued)
    not been proved by clear and convincing evidence." Cooper v. James, 2001 SD 59, ¶16, 627 NW2d 784, 789.

distribution. The wrongful death lawsuit brought in state court settled for $2,500,000.00, and the federal lawsuit settled for $950,000.00. Although both settlements were approved by the respective courts and placed in the SVB Trust, neither settlement provided guidance for distribution of the SVB Trust between the Estates of Sheesley and Vermeulen or allocation among the beneficiaries of the Estates. A separate settlement of $200,000.00 was reached with one defendant. This amount was not placed in the SVB Trust, but was distributed equally between the Estates of Sheesley and Vermeulen, less their equal share of attorneys' fees. Each estate received $93,333.00. Based on a written stipulation between Wilcox and Vermeulen, and upon oral argument by the parties at trial, the trial court decided the $200,000.00 settlement and subsequent distributions did not include an agreement to exclude that amount from this distribution proceeding. The trial court found that the lack of an agreement to the contrary established that the two interim distributions of $93,333.00 were subject to a final distribution between the Estates of Sheesley and Vermeulen.

[¶24.] "We review conclusions of law under the de novo standard without deference to the [trial] court." *In re* Estate of Watson, 2003 SD 142, ¶9, 673 NW2d 60, 62 (citations omitted). The "[e]xistence of a valid contract is a question of law," *In re* Estate of Neiswender, 2000 SD 112, ¶9, 616 NW2d 83, 86 (citations omitted), and the "proponent has the burden 'to prove the contract by evidence so clear and satisfactory' that no doubt remains," *id*. ¶10 (citing Neuharth v. Brunz, 85 SD 267, 274, 181 NW2d 92, 95 (1970) (citing Ward v. Melby, 82 SD 132, 142 NW2d 526 (1966))) (additional citation omitted).

[¶25.] Vermeulen had the burden as the proponent to establish the existence of an agreement that the $93,333.00 was a final distribution. *See id.* In support of her contention, Vermeulen noted that the parties stipulated that the $200,000.00 settlement was not deposited in the SVB Trust, "which is the subject of the instant action"; that Vermeulen signed a release based on the receipt of $93,333.00; and, that to divide those proceeds using the same percentages as applied to the SVB Trust would be "patently unfair." These arguments fail to establish an agreement that the $200,000.00 settlement and subsequent $93,333.00 distributions to each estate were final distributions not subject to a later distribution between the Estates of Sheesley and Vermeulen.

[¶26.] The signed release was a condition to settlement, "simply a release to settle the case." Both parties admit the release and settlement did not include language referencing the type of distribution. Vermeulen conceded that it was "sort of a boiler plate standard release." Furthermore, the stipulations confirm that the parties understood these were not final distributions. The December 18, 2008, Stipulation #5 states: "That at the time [the $200,000.00 claim] was settled, there was no agreement as to how such proceeds should be allocated *among any beneficiaries* of the wrongful death proceeds." (Emphasis added.)

[¶27.] Finally, leaving this settlement out of the SVB Trust does not reflect a final distribution of those proceeds. The parties stipulated that Wilcox and Vermeulen, apart from Bielstein, entered into an agreement to settle with one of the defendants in the federal court lawsuit. Deposit of this settlement into the SVB Trust raised further settlement complications with the Estate of Bielstein because

that Estate was a party to the SVB Trust. Wilcox and Vermeulen agreed to split the settlement proceeds therein on an equal basis to facilitate resolution of the matter. This evidence suggests an interim distribution to circumvent a problem with the Estate of Bielstein; it does not reflect an agreement that the distribution would be final as between the Estates of Sheesley and Vermeulen. Furthermore, because the parties in fact did not divide the settlement proceeds themselves, the trial court was required to divide the entire award between them. SDCL 21-5-8.

[¶28.] Therefore, the trial court did not err as a matter of law. The trial court correctly decided that Vermeulen failed to establish the existence of an agreement as to the finality of the $93,333.00 distribution "by evidence so clear and satisfactory that no doubt remains." *Neiswender*, 2000 SD 112, ¶10, 616 NW2d at 86 (citations and internal quotations omitted). Further, because this amount was not distributed between the Estates of Sheesley and Vermeulen, it was subject to final court distribution pursuant to SDCL 21-5-8. The entire $186,666.00 is subject to final distribution between the Estates of Sheesley and Vermeulen because there was no agreement that each $93,333.00 distribution was a final distribution.

[¶29.] Affirmed.

[¶30.] ZINTER, Justice, concurs.

[¶31.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur specially.

[¶32.] SABERS, Retired Justice, dissents in part and concurs in part.

[¶33.] SABERS, Retired Justice, sitting for KONENKAMP, Justice, disqualified.

MEIERHENRY, Justice (concurring specially).

[¶34.]     I concur.  I write only to point out some of the problems that this case raises concerning attorney representation in the underlying litigation.  Initially, both parties in this action - Wilcox and Vermeulen - were represented by the same attorneys.  Those attorneys instituted lawsuits against the aircraft companies and other defendants.  Their representation of both Wilcox and Vermeulen appears to be in direct conflict with Rule 1.7 of the South Dakota Rules of Professional Conduct.  Rule 1.7 provides:

> (a)     Except as provided by paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
>> (1)     the representation of one client will be directly adverse to another client; or
>> (2)     there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b)     Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>> (1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2)     the representation is not prohibited by law;
>> (3)     *the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or same matter before a tribunal; and*
>> (4)     each affected client gives informed consent, confirmed in writing.

SDCL 16-18 App., Rules of Prof. Conduct, Rule 1.7 (emphasis added).

[¶35.]     A conflict of interest exists if "there are substantially different possibilities of settlement of the claims or liabilities in question." *Id.* cmt. 23.

Additionally, as the comment to this Rule indicates, some conflicts prohibit concurrent representation and are "nonconsentable."

> Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding.

*Id.* cmt. 17. Based on the issues now before us concerning the division of the trust, a real question exists as to whether the original lawyers were able to "vigorously develop each client's position in the same litigation or other proceeding before a tribunal." The original lawyers settled in the midst of trial, took their fees - totaling over $1,657,500 - and left the widows and children to fight over the settlement balance of $1,625,000 placed in the trust. As a result, the parties had to hire new lawyers to litigate the division of the trust. I point this fact out in an attempt to identify the source of the conflict in this case rather than just the symptom.

[¶36.]     GILBERTSON, Chief Justice, joins this special writing.


SABERS, Retired Justice (concurring in part and dissenting in part).

[¶37.]     I dissent on Issue I and concur on Issue II. I dissent because a decision based on an error of law is, by definition, an abuse of discretion. Credit Collection Servs., Inc. v. Pesicka, 2006 SD 81, ¶5, 721 NW2d 474, 476 (citation omitted). The application of judicial estoppel is a mixed question of fact and law we review de novo. *Watertown Concrete*, 2001 SD 79, ¶11, 630 NW2d at 112 (citation omitted). The trial court erred as a matter of law in applying judicial estoppel to the facts of

this case to deny Vermeulen's motion to admit expert testimony. This decision was based on an error of law and it was an abuse of discretion.

[¶38.]  **1.  The trial court erred in applying judicial estoppel and in denying Vermeulen's motion to offer additional expert testimony.**

[¶39.]  The trial court ruled that Vermeulen was judicially estopped from offering a different expert. This Court has considered the following factors in deciding whether to apply judicial estoppel:

> [T]he later position must be *clearly inconsistent* with the earlier one; the earlier position was *judicially accepted*, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

*Canyon Lake Park*, 2005 SD 82, ¶34, 700 NW2d at 737 (emphasis added) (citations omitted).

### *Vermeulen's Position is Not Clearly Inconsistent*

[¶40.]  It is clear that Vermeulen did not take the position that Frankenfeld would be the sole expert for apportionment purposes. The co-plaintiffs hired one expert for three wrongful death actions that were ultimately settled out-of-court. This does not mean that Vermeulen took the position during those trials that Frankenfeld, the sole expert for trial, would also provide the exclusive testimony for apportionment purposes. In fact, the settlements failed to apportion the money among the beneficiaries or estates according to Frankenfeld's testimony. That failure suggests that apportionment of the settlements *would not* be based on the sole testimony of Frankenfeld. Based on these facts, and the fact that Frankenfeld omitted all non-economic loss analysis and economic loss analysis as to Vermeulen's

children, Vermeulen did not assert a *clearly inconsistent* position by offering expert opinion.

### The Trial Court Erred in Ruling Vermeulen's Position was Judicially Accepted and the Majority Opinion Affirms that Error

[¶41.] Vermeulen claims that even if a "clearly inconsistent" position was asserted during the trials leading to settlement, any earlier position was not "judicially accepted." While we have yet to define the contours of "judicially accepted" under the judicial estoppel doctrine, it appears that neither party's positions were judicially accepted in this case.

[¶42.] The judicial acceptance element requires inquiry into "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled[.]'" *New Hampshire v. Maine,* 532 US at 750, 121 SCt at 1815 (citation omitted), *cited with approval in Watertown Concrete,* 2001 SD 79, ¶12, 630 NW2d at 112-13. The law is unsettled as to what constitutes success in achieving judicial acceptance.

[¶43.] One view "hold[s] that [judicial estoppel] is inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation; only in that situation . . . is there a risk of inconsistent results and a threat to the integrity of the judicial process." Morris v. State of Cal., 966 F2d 448, 453 (9thCir 1991) (citations omitted). The opposing view holds that judicial estoppel "applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing 'fast and loose' with the court." *Id.* (citations omitted). Clearly, judicial estoppel is more appropriate when a court has adopted a

prior position or statement because only then is there a clear risk of inconsistent results which threatens the integrity of the judicial process.

[¶44.]     Our case law reflects that judicial acceptance of a party's underlying theories or claims through prior legal determinations is required to apply judicial estoppel. *See* State *ex rel.* White v. Brandt, 2008 SD 33, ¶¶20-21, 748 NW2d 766, 772-73 (noting that assertion of paternity was judicially accepted through a guilty plea for failure to pay child support and also through Brandt's request for modification of child support obligation); *Canyon Lake Park*, 2005 SD 82, ¶37, 700 NW2d at 738 (noting that a position was not judicially accepted because it was not relied upon by the Board in making the decision); Foster v. Foster, 2003 SD 151, ¶18, 673 NW2d 667, 672-73 (applying judicial estoppel and noting an inconsistent position was judicially accepted in prior bankruptcy adjudication); *Watertown Concrete*, 2001 SD 79, ¶10, 630 NW2d at 112 (noting judicial estoppel was only applicable "when a party *successfully* maintains a certain position in a legal proceeding" (emphasis added)); Gregory v. Solem, 449 NW2d 827, 832 n8 (SD 1989) (applying judicial estoppel to a trial tactic decision that was accepted in a previous ruling). The issue is whether the Sheesley, Vermeulen, Bielstein settlement constituted a legal determination or judicial acceptance of the parties' prior positions.[8]

---

8.     Wilcox and the trial court relied on *Warren Supply Co. v. Duerr, Pliley, Thorsheim Dev., Inc.,* 355 NW2d 838 (SD 1984), for the proposition that settlements qualify as being judicially accepted. In that case, however, this Court upheld the application of judicial estoppel to a position taken in a *stipulation* which was incorporated *into a judgment* by the trial court. That case resulted in a settlement whose underlying theories and positions were

(continued . . .)

[¶45.]    In *Konstantinidis v. Cheng Nan Chen*, 626 F2d 933, 938-39 (DCCir 1980), the court stated: "A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." *See* E. Cambridge Sav. Bank v. Wheeler, 422 Mass 621, 623, 664 NE2d 446, 448 (1996) (same); Vowers & Sons, Inc., v. Strasheim, 254 Neb 506, 514-15, 576 NW2d 817, 824 (1998) (same); Mainor v. Nault, 120 Nev 750, 766, 101 P3d 308, 319 (2004) (same); Commercial Ins. Co. of Newark v. Steiger, 395 NJSuper 109, 116, 928 A2d 126, 130 (2007) (same). These cases are persuasive authority that a settlement often lacks the necessary judicial acceptance to invoke judicial estoppel. In this case, Vermeulen, Sheesley, and Bielstein settled out-of-court for a sum of money which was approved by the respective courts. These settlement**s** and approval**s** were void of any legal determinations as to the merits of the case, the underlying weight given to each piece of evidence in reaching the settlement amount, or any determination as to positions asserted during the trial. In this situation, without a legal determination, it would be improper to claim Vermeulen is playing fast and loose with the courts or is "perverting the judicial machinery." *Canyon Lake Park*, 2005 SD 82, ¶34, 700 NW2d at 738 (citation omitted).

---

(. . . continued)
   judicially accepted by the court through the entry of judgment which included the stipulations. Therefore, Wilcox finds no support in that case.

***The Trial Court Gave Lip Service to the Wrongful Death Statutes and then Ignored Them***

[¶46.]     Wilcox argues the apportionment hearing must be based on the evidence presented at the wrongful death trials because the settlement amount was agreed to in reliance on that evidence.  In response, Vermeulen asserts that the prior action was not adversarial between co-plaintiffs or between each statutory beneficiary, but the apportionment hearing was, and therefore, additional competing evidence was required.

[¶47.]     Wilcox's reliance on the evidence presented at trial as conclusive for purposes of apportionment is misguided.  Because the beneficiaries did not adjust among themselves the portion each was to take under SDCL 21-5-8, the court was charged with the responsibility of apportioning this settlement.  *Id.*  In so doing, the apportionment court was not bound by the evidence used to ascertain the settlement or jury award; rather, it was required to apportion "among the beneficiaries" in a "manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries."  *Id.*  Therefore, any reliance by Wilcox that the apportioning court would consider only the evidence presented at the wrongful death hearings is misplaced and unreasonable.  Because the reliance element is lacking, neither promissory nor equitable estoppel apply.[9]

[¶48.]     Despite Wilcox's assertion, statutory beneficiaries are not "required to participate in the wrongful death action in order to protect [their] interest in the

---

9.     Additionally, promissory estoppel does not apply in this situation because Wilcox has not come forward with sufficient evidence that Vermeulen promised to use only one expert for trial and apportionment.

proceeds." *In re* Estate of Howe, 2004 SD 118, ¶26, 689 NW2d 22, 29. Therefore, statutory beneficiaries will often benefit from the testimony offered at the wrongful death trial to the detriment of the personal representative in whose name the action was brought. Moreover**,** estoppel is a doctrine of equity "founded upon principles of morality and fair dealing." Weaver v. Bauer, 76 SD 401, 406, 79 NW2d 361, 364 (1956). In this case, fair dealing would dictate that the Vermeulen beneficiaries not be required to challenge *their own expert* at trial. When settlement awards are less than the sum of the separate claims, beneficiaries have competing interests in the settlement fund. Corder v. Corder, 41 Cal4th 644, 658, 161 P3d 172, 181 (Cal 2007). SDCL 21-5-8 presupposes those competing interests between beneficiaries of wrongful death awards or settlements by requiring judicial apportionment if the award or settlement is not adjusted among themselves. "And quite obviously, competing interests cannot be adjudicated *unless litigants are entitled to challenge their adversary's position.*"[10] *Corder*, 41 Cal4th at 658, 161 P3d at 181 (emphasis added).

[¶49.]     Based on the foregoing, judicial estoppel is inapplicable because even if Vermeulen took an inconsistent position, this out-of-court settlement did not constitute judicial acceptance of any position by either plaintiff. Therefore, the trial

---

10.   By Wilcox's own stipulations, they have conceded that Vermeulen may put forth arguments contrary to their purported position at trial. The December 11, 2008, stipulation number 7 states: "This Stipulation does not preclude the parties' ability to argue any points regarding the testimony." This further evidences that estoppel is unwarranted in this case. We should not hold that beneficiaries can argue adverse positions during apportionment but cannot present testimony supporting their arguments.

court erred as a matter of law in applying judicial estoppel to deny Vermeulen's request to offer expert testimony. As noted above, a decision based on an error of law is, by definition, an abuse of discretion. *Credit Collection Servs.*, 2006 SD 81, ¶5, 721 NW2d at 476 (citation omitted). The majority opinion acknowledges that judicial estoppel is not proper and hints, without proof, that promissory or equitable estoppel applies. However, any estoppel based on Wilcox's reliance that the evidence offered at the wrongful death trials would be the only evidence considered at the apportionment hearing would also be error. The apportioning court is not bound to the evidence submitted at the wrongful death trials, and is required to apportion in a "fair and equitable" manner. SDCL 21-5-8. The majority opinion does an end run around this clear abuse of discretion by reasoning that we must affirm whether estoppel was appropriate or not because no offer of proof was provided and prejudice was not shown.

### *An Offer of Proof was Not Necessary and Prejudice is Obvious*

[¶50.] The majority opinion states, "In addition to showing an abuse of discretion, [Vermeulen] must show that the excluded evidence might and probably would have resulted in a different verdict," *Thompson*, 2005 SD 69, ¶21, 698 NW2d at 520 (citation omitted), and that "[Vermeulen] must make the substance of the evidence known to the trial court by making an offer of the excluded evidence at trial or prior to trial by an offer of proof." *Id*. (citations omitted). *Supra* ¶7. However, no offer is necessary when "the substance of the evidence [is] apparent from the context[.]" SDCL 19-9-3(2) (Rule 103(a)).

[¶51.]     In this case, the substance of Vermeulen's expert evidence was apparent from the context. The trial court knew the substance of Vermeulen's expert evidence from the context because of the dialogue at the motion hearing and Vermeulen's brief in support of the motion. During the hearing on the motion for leave to present expert testimony, Vermeulen's counsel specifically argued that Frankenfeld did not consider economic damages to Karla and Ryan Vermeulen and "did not look at apportionment in any manner." Further, Vermeulen's counsel stated that a prior summary by joint counsel points out that "Mr. Frankenfeld overestimated Shane Sheesley's wages." Vermeulen's counsel then stated, "[These] points alone should allow my client to have a separate analysis for purposes of helping or assisting [ ] this court in apportioning all the damages." Vermeulen's counsel also stressed at the motion hearing that there is no testimony as to non-economic damages. These arguments were also put forth in Vermeulen's brief in support of the motion. From the dialogue at the motion hearing and the brief in support of the motion, the substance of Vermeulen's expert evidence was apparent from the context and known by the trial court. Vermeulen clearly intended to offer expert testimony as to economic and non-economic loss to the parties and to challenge Frankenfeld's opinion as to Sheesley's earning capacity. Therefore, because this substance was apparent from the context, no offer of proof was necessary. SDCL 19-9-3(2).

[¶52.]     Moreover, the trial knew the substance of Vermeulen's expert evidence because the trial court based its ruling on judicial estoppel. In order to apply judicial estoppel, the trial court must have known the substance of both the prior

testimony and the offered testimony. Without knowing both, the trial court would not be able to determine if the offered evidence was inconsistent. Therefore, because the trial court applied judicial estoppel in this case, it must have known the substance of Vermeulen's expert evidence.

[¶53.] The majority notes that Vermeulen must also "show that the excluded evidence might and probably would have resulted in a different verdict." *Thompson*, 2005 SD 69, ¶21, 698 NW2d at 520 (citation omitted). In the subsequent apportionment hearing after the wrongful death trials, it was clear that beneficiaries had competing interests in the settlement fund. *See Corder*, 41 Cal4th at 658, 161 P3d at 181. As noted above, "competing interests cannot be adjudicated *unless litigants are entitled to challenge their adversary's position.*" *Id*. (emphasis added). The trial court erroneously adjudicated Vermeulen's competing interests without allowing Vermeulen to challenge Wilcox's position through expert testimony. This alone shows that the excluded evidence might and probably would have resulted in a different verdict and definitely would have helped the trier of fact apportion the settlements in a "fair and equitable" manner.

## CONCLUSION

[¶54.] The trial court erred as a matter of law in applying judicial estoppel to Vermeulen's request to offer expert testimony. Therefore, the trial court abused its discretion. *Credit Collection Servs.*, 2006 SD 81, ¶5, 721 NW2d at 476 (a decision based on an error of law is, by definition, an abuse of discretion) (citation omitted). In addition to showing an abuse of discretion, the record satisfies the majority opinion's concerns as to the substance of the evidence and prejudice. Because the

substance of Vermeulen's expert evidence was apparent from the context, *i.e.*, the dialogue at the motion hearing, briefs in support of the motion, and the trial court's application of judicial estoppel, an offer of proof was not necessary. SDCL 19-9-3(2). Furthermore, we should not penalize co-plaintiffs in wrongful death actions by requiring them to cross-examine their own expert during trial. Because the prior co-plaintiffs now have a competing interest in the settlement fund, they were prejudiced by not being allowed to challenge their adversary's position through expert testimony at the apportionment hearing. Therefore, the trial court abused its discretion by precluding competing expert testimony. Without expert testimony it would be impossible to find compliance with the wrongful death statutes which require a "fair and equitable" apportionment among beneficiaries. SDCL 21-5-8.

[¶55.]     For these reasons, I respectfully dissent on Issue I. I would reverse the trial court and remand for a new apportionment hearing in which any statutory beneficiary could offer additional expert testimony.